# HARRISON v. PEREA.

# PEREA v. HARRISON.

APPEALS FROM THE SUPREME COURT OF THE TERRITORY OF NEW MEXICO.

Nos. 113, 497. Argued November 10, 11, 1897. — Decided November 29, 1897.

When the defendant's answer in a chancery suit sets up matters which are impertinent, and he also files a cross bill making allegations of the same nature, a demurrer to the cross bill on that ground should be sustained.

The findings of fact in an appeal from the Supreme Court of a Territory are conclusive upon this court, whose jurisdiction on such appeal, apart from exceptions duly taken to rulings on the admission or rejection of evidence, is limited to determining whether the findings of fact support the judgment.

It being found that the defendant converted the entire assets which are the subject of this controversy, there was no error in charging him with interest on the amount so converted, without regard to whether he did or did not make profits.

The solicitor was properly allowed a fee from the fund.

An item in the decree below which was not appealed from by the complainant is not before this court for consideration.

A clerical error in the decree of the court below caused by the omission of the name of one of the distributees, can be corrected, on application, by the court below after the case is sent down.

The costs in this court must be paid by Harrison personally.

THE bill in the first above entitled suit was filed in a District Court of the Territory of New Mexico, in chancery, by Pedro Perea, as sole surviving administrator of the estate of José L. Perea, Second, deceased, and as one of his heirs-at-law, against the defendant, George W. Harrison, individually and as administrator of the estate of his wife, Guadalupe Perea de Harrison, and also against the other heirs-at-law of José L. Perea, Second. It was brought to compel an accounting by the defendant George W. Harrison, individually and as administrator of the estate of his wife, for the property and assets of the estate of José L. Perea, Second, which had come into his hands.

The bill in substance alleged the following facts: José

Perea, Second, a resident of New Mexico, died in that Territory on the 27th of August, 1887, being about the age of eight years. He left him surviving his mother, Guadalupe Perea, who was then a widow, and his half brothers and sisters as his heirs-at-law. On the 23d of July, 1884, his mother had been appointed his guardian and had taken possession of his property. In September, 1885, she married the defendant George W. Harrison. She continued guardian of her son up to his death, in August, 1887. In September, 1887, the complainant was appointed administrator and the mother was appointed administratrix of the estate of the minor. They both gave bonds and took the requisite oaths. On the 6th of March, 1888, the mother made what she termed a final report of her guardianship to the probate court, which showed a balance of over seventeen thousand dollars in her hands belonging to the estate of the minor. Under the influence of her husband she claimed, from the time of her son's death down to her own decease, to hold the property as guardian and not as administratrix, and while acting under that influence she refused to permit the complainant, after his appointment as administrator, to assist in the administration of the estate, or to have possession or control over any of its assets. Objections were made by the complainant to the report filed by the mother in March, 1888, called the guardian's final account, and these objections were sustained by the probate court. An appeal from that order was taken by the mother, but no further proceedings were had therein; and the same was practically abandoned. The mother died October 20, 1889. Her husband then unlawfully took possession of the property of the minor in her hands at the time of her death, and subsequently and on the 6th of January, 1890, he took out letters of administration on her estate, she dying intestate. He then claimed to hold the estate of the minor by reason of being administrator of his wife's estate. He took possession of the minor's estate individually, with full knowledge of its trust character, placed it to his own credit in bank, mingled it with his own funds, and claimed the right to retain possession and control thereof, and refused the demand to pay over the estate to him, which

the complainant made in his capacity as sole surviving administrator of the estate of the minor. It was also alleged that the mother of the deceased minor, acting under the influence and by the direction of her husband, and the defendant Harrison himself, individually, did by their actions cause great damage to the estate of the minor, and relief was demanded against the defendant Harrison as administrator of his wife's estate, and individually for an accounting in relation to the estate of the minor, of which he was in possession, and for a recovery of the amount found to be in his possession.

The defendant Harrison demurred to the bill, his demurrer was overruled, and he then answered both individually and as administrator of the estate of his deceased wife. In that answer the defendant denied many of the material allegations contained in the bill. He alleged that he and the defendant Grover William Harrison, who was minor child of himself and his deceased wife, Guadalupe Perea de Harrison, had succeeded to all the interest and rights of his said wife in and to the property of the estate of José L. Perea, Second, and for that reason the complainant was not entitled to a decree for anything upon the accounting. The answer also alleged that the complainant was a son and also one of three administrators of the estate of the late José L. Perea, Senior, (two of complainant's brothers being the other administrators,) and that those administrators had failed to account for a large sum of money which was due from the estate of José L. Perea, the elder, to José L. Perea, Second, in his lifetime, and afterwards to his estate; and it was alleged that large amounts of property had come into the hands of such administrators of the estate of the deceased father, José L. Perea, Senior, of which no account had been made, and that the *pro rata* share of the minor, José L. Perea, Second, in these assets so unaccounted for would amount to thirty thousand dollars.

The complainant excepted to so much of the answer as contained the above allegations relating to the estate of the elder Perea and the action of the administrators with regard thereto, upon the ground of impertinence.

The defendant, by leave of court, also filed a cross bill, in

which in very great detail he set forth the condition of the estate of the elder Perea and the action of the administrators thereof. Among other things it was alleged that the elder Perea in 1842 married his first wife and they lived together until 1877, when she died; that he had by her six daughters and six sons, and that he brought into the marriage community a large amount of property, real and personal, amounting to a hundred thousand dollars, acquired by him by inheritance, bequest and other means, and in addition personal property of the value of about three hundred thousand dollars, and that at the time of his marriage his wife owned in her own right and brought into the marriage community real property situate in the Territory of New Mexico of the value of thirty thousand dollars and personal property of the value of thirty thousand dollars; that this property of the husband and wife became upon their marriage property of the marriage community, and so continued to remain the property of the parties, to which large accretions and additions were made by the industry and labor of the husband and wife, so that at the time of the death of the wife in 1877 the full value of the united property was three hundred thousand dollars of realty and five hundred thousand dollars of personalty, and that all of this property, except the amount brought into the marriage community, was gain and increase of that property and belonged in equal parts to the husband and wife.

It was further alleged that in 1883 the elder Perea died, and that his estate had not been properly administered; that property belonging to the estate had not been inventoried as such; that the conduct of the administrators had been wasteful, the estate had not been properly taken care of, and that the administrators had expended large amounts of the community property in the purchase of real property, so that such property had been unlawfully converted into worthless real property. It was also alleged that a pretended settlement had been made before the probate judge in New Mexico, and the administrators had made an accounting before the court, and had obtained their discharge and the cancellation of their bonds by that court; that this settlement before and discharge

by the probate court was a fraudulent one and fraudulently obtained, and that the decree should be set aside. It was also alleged that the defendant Harrison and his wife had before her death commenced a suit against the complainant and the other defendants who were administrators of the estate of the elder Perea, asking for an accounting in regard to the identical matters and things set up in this cross bill; and that such suit was still pending and undetermined at the time of the commencement of this suit by the complainant herein.

Various other matters in relation to the management of the estate of the elder Perea were set forth in the cross bill at very great length, and relief was demanded in accordance with what was alleged to be his rights by such complainant. This relief was of all varieties, including an investigation into accounts and matters relating to community property arising out of the marriage of the elder Perea in 1842, and an inquiry as to what was such property and its proper increase; also injunctions, accountings, decrees for conveyance, for distribution, for removal of the administrators; for the annulling of the pretended and fraudulent decree discharging the administrators and finally settling their accounts, and for the appointment of a receiver of the estate of the elder Perea.

To this cross bill the complainant herein demurred upon several grounds, the substance being that it was multifarious in that it was brought in regard to matters having no connection with the subject-matter of the original bill, and not proper to be investigated in this suit.

The exceptions to the answer and the demurrer to the cross bill were argued at the same time, and, after hearing counsel, the court allowed the exceptions and struck out the matter excepted to, and it also sustained complainant's demurrer to the cross bill.

The case then being at issue was duly referred to a master, before whom both parties appeared and introduced their proofs, after which the master made his report. Upon that report and the evidence taken before the master, the case was brought to a hearing, and the court found in substance that the allegations set forth in complainant's bill were true. The

court also found that José L. Perea, Senior, died about the 21st day of April, 1883, and left his widow, Guadalupe Perea, (who afterwards married the defendant George W. Harrison,) and the other defendants in this suit, with the exception of George W. and Grover William Harrison, his heirs-at-law. José Perea, Second, was the son of the elder Perea by his second wife, Guadalupe Perea. After the death of the elder Perea, his widow married, as heretofore stated, the defendant George W. Harrison, and by him she had issue, Grover William Harrison, one of the defendants herein. With these exceptions all of the defendants were children of the elder Perea by a former wife. Pedro, Mariano and Jesus M. Perea were appointed administrators of the estate of their deceased father.

The court also found that the defendant George W. Harrison, not only upon the death of his wife had control, but that immediately after their marriage he took control and charge of the assets of the deceased minor, and at the time of the entry of the decree herein he still retained and had possession of all the moneys belonging to that estate, and that they were subject to his individual control.

At the time of the death of the minor he owed no debts and there were no charges against his estate except his funeral expenses and the expenses of his last illness and certain claims for his maintenance by his guardian. The defendant George W. Harrison, in the name of his wife and in her lifetime, made sundry reports to the probate court as to the condition of the estate, some of which contained false entries to her advantage, and together they obstructed the distribution of the estate among the heirs.

The court also found that George W. Harrison, the defendant, wilfully obstructed the distribution of the assets of the estate of the minor, and by his misconduct rendered it necessary that the complainant should obtain possession of the assets by the institution of this suit, and that the necessity for this suit arose entirely out of the wrongful conduct of the defendant Harrison.

The amount found due from the defendant to the com-

plainant was stated in the decree to be, with interest up to
the date of the entry of the decree, June 19, 1893, the sum
of $31,545.32, of which the defendant Harrison was entitled
as administrator of the estate of his late wife, Guadalupe Perea
de Harrison, to thirteen twenty-sixths, and to three twenty-
sixths in addition by reason of the purchase of the interests
of some of the heirs of the estate of José L. Perea, Second,
and to one twenty-sixth more, as guardian of Grover William
Harrison, one of the defendants, being a total of seventeen
twenty-sixths; and the other heirs were each decreed entitled
to one twenty-sixth of such balance; and it was provided in
the decree that the defendant Harrison might, instead of turn-
ing over to the complainant, the administrator of José Perea,
Second, the full sum found due, retain the amount found due
him from the estate, which was stated to be the sum of
$16,227.19. The defendant George W. Harrison was also
charged with the payment of the costs of the suit individu-
ally, including the sum of one thousand dollars allowed the
special master.

From the final decree thus entered the defendant George
W. Harrison appealed to the Supreme Court of the Territory
of New Mexico, which court, with some modifications, affirmed
the judgment of the court below. Those modifications con-
sisted in charging interest upon the full amount of the sum
found due by the decree of the court below, from the time
of the entry of that decree up to the 26th of August, 1895,
which amounted to the sum of $4324.45, and the defendant
was charged in the decree of the last named date with the
full sum of $35,869.77. The fee for the solicitor of complain-
ant was reduced from $5000 to $3586.97, being ten per cent
upon the amount found in the hands of the defendant Harri-
son. The complainant, as administrator, was decreed to be
entitled to the statutory commission upon the last named sum
found by the court to be due from the defendant Harrison,
which commission amounted to $1943.48. The court also re-
duced the compensation of the special master from $1000 to
$500. The court also modified the decree against Harrison
for the payment of costs individually, by directing "that the

said solicitor's fee, the said commission for said administrator, the said special master's fee, and all of the costs of this case in this court and in the court below, should be paid out of said fund, and that of the remainder the said defendant George W. Harrison may retain in his possession seventeen twenty-sixth parts thereof, and that he shall pay over to said Pedro Perea, as administrator of José L. Perea, deceased, the remaining nine twenty-sixths, to be distributed to the heirs at law of said José Leandro Perea, Second," as directed by the court. From the judgment of affirmance as modified the defendant George W. Harrison has appealed to this court. The complainant also took a cross appeal from the judgment.

*Mr. William B. Childers* for Harrison.

*Mr. Neill B. Field* for Perea.

MR. JUSTICE PECKHAM, after stating the case, delivered the opinion of the court.

The question first arising in this case is in regard to the correctness of the decisions of the courts below in allowing complainant's exceptions to portions of the answer of the defendant Harrison and in sustaining the demurrer to defendant's cross bill. The decision of the two matters rests in this case upon essentially the same foundation. If the allegations of the defendant's answer to the original bill are impertinent, it would follow that in this case the cross bill would be multifarious, and that the demurrer on that ground should be sustained. The allegations in the two pleadings are of the same nature, only in the cross bill they are very greatly extended and set forth in almost infinite detail.

Impertinence is described by Lord Chief Baron Gilbert to be : "Where the records of the court are stuffed with long recitals, or with long digressions of matter of fact, which are altogether unnecessary and totally immaterial to the matter in question." 1 Daniell's Chancery Pl. & Pr., (5th Am. ed.) marginal paging, 349. It is also said that impertinence is the introduction of any matters in a bill, answer or other pleading

in the suit which are not properly before the court for decision at any particular stage of the suit. *Wood* v. *Mann,* 1 Sumner, 578. "The best test to ascertain whether matter be impertinent is to try whether the subject of the allegation be put in issue in the matter in dispute between the parties." All matter not material to the suit is regarded as impertinent. *Woods* v. *Morrell,* 1 Johns. Ch. 103 ; 1 Daniell, *supra,* 349, note.

As to multifariousness, it was said in *Shields* v. *Thomas,* 18 How. 253, 259: "There is, perhaps, no rule established for the conducting of equity pleadings, with reference to which (whilst as a rule it is universally admitted) there has existed less of certainty and uniformity in application, than has attended this relating to multifariousness. This effect, flowing, perhaps inevitably, from the variety of modes and degrees of right and interest entering into the transactions of life, seems to have led to a conclusion rendering the rule almost as much an exception as a rule, and that conclusion is, that each case must be determined by its peculiar features. Thus Daniell, in his work on Chancery Practice, vol. 1, p. 384, quoting from Lord Cottenham, says: 'It is impossible, upon the authorities, to lay down any rule or abstract proposition, as to what constitutes multifariousness, which can be made universally applicable. The cases upon the subject are extremely various, and the court, in deciding upon them, seems to have considered what was convenient in particular cases, rather than to have attempted to lay down an absolute rule.'" Continuing his opinion, the learned justice in the above case said: "Justice Story, in his compilation upon equity pleading, defines multifariousness in a bill to mean 'the improperly joining in one bill distinct and independent matters, and thereby confounding them.' . . . Justice Story closes his review of the authorities upon this defect in a bill with the following remark: 'The conclusion to which a close survey of the authorities will conduct us, seems to be, that there is not any positive inflexible rule as to what, in the sense of a court of equity, constitutes multifariousness, which is fatal to a suit on demurrer.'"

Upon consideration of the various cases, we think that in

allowing the exceptions to the answer and in sustaining the demurrer to the cross bill, the courts below committed no error.　The facts which the defendant Harrison endeavored to set up in his answer and cross bill were not relevant to the matters properly in issue in this suit.　Neither the convenience of the parties nor their rights in regard to the matters set forth in the original bill would be aided by entering upon an inquiry relating to the matters set up in the answer and cross bill.　It is clear that an investigation and accounting, such as is asked for in the cross bill, would take a long time, probably many years, to finish, involving as it would an inquiry into the amount of the community property of the elder Perea and his wife in 1842, and what should be found to be the actual increase springing from the same; also an inquiry into the transactions of the administrators of the estate of the elder Perea and into their liability on account of the same, together with the taking of evidence upon the subject of the fraudulent character of the decree of the probate court discharging the administrators of that estate.　It would in addition include an inquiry into the question whether the administrators, if the decree were set aside, had been guilty of such conduct in the care and management of the estate coming into their hands as would make them liable for any loss sustained by the estate in consequence of such action.　In fine, it is seen that the character of the investigation demanded by the cross bill and of the relief sought thereby is extensive enough to call for an almost interminable amount of research and labor.　These considerations are not of the slightest moment when weighed against the legal rights of the parties interested in the question; and their right to have such investigation made and adequate and proper relief granted is not a matter of discretion or of favor.　If they have not slept upon their rights and if they come into court at the proper time and in a proper action, the court will enter upon the necessary investigation and grant such relief as they may be entitled to.　On the other hand, these considerations are most material and vital upon the question of the necessity or propriety of such an investigation in this suit which was

brought for a different purpose, and which would be necessarily greatly delayed in its termination if such an inquiry. should be now entered upon.

Let us look for a moment at the simple character of this suit. It is brought to recover as administrator the assets of the estate of the minor already mentioned, the possession of which the defendant Harrison does not deny. He shows no right to them as against the complainant, because the facts he sets up in his answer form no defence. Nor do the same facts when set forth in the cross bill constitute a cause of action against this complainant, proper to be proved and defended against in this suit, as against the demand of the complainant herein. It is plain that the complainant, as the surviving administrator of the estate of the deceased minor, was entitled to the immediate possession of all the assets of such estate. Upon the death of the minor the guardianship of the mother ceased, and as she was thereupon appointed administratrix, her continuing to hold the assets of the estate from the time of such appointment was as administratrix and not as guardian. The counsel for Harrison says in his brief that he is disposed to concede this proposition. It is plainly true. Her right or duty to account, as guardian, did not affect the title to the property upon the death of the ward. That title became vested in the administrator and administratrix upon their appointment. 1 Williams on Executors, (6th Am. ed.) 696. The plaintiff herein, as coadministrator, had the same legal title to the assets that she had. The advantage of possession was with her. But on the death of the administratrix the complainant remained the sole surviving administrator, and in him was vested the exclusive title and the right to the immediate possession of the assets of the estate of the deceased minor. Instead of obtaining that possession he finds all the assets in the hands of the defendant Harrison, who refuses to give them up. Their amount is not really in controversy. The defendant shows no right or title whatever to them. It is no answer to the demand that the defendant should pay over the sum which is in substance acknowledged to be in his possession, to say that the

minor's estate may be increased after an accounting shall be had and judgment obtained and the money paid over in the matter of the estate of the elder Perea. The claim upon that estate, so far as the defendant Harrison is concerned, either individually or as administrator of his deceased wife, is altogether too remote and too disconnected from the issues properly joined in the original suit herein to make it necessary, on his demand, to turn aside from their decision until that claim shall be hereafter and in this suit determined. It would be entering upon an investigation into matters connected with a different estate, an inquiry into which would involve innumerable questions which would have no bearing upon the decision as to the right of defendant to retain these particular funds now in his individual possession and treated by him as his own.

It must also be borne in mind that the defendant Harrison has an action pending against the complainant herein and the other and surviving administrator of the estate of the elder Perea, together with his other heirs-at-law, in regard to these very matters which are set up in his cross bill herein. Indeed, this cross bill contains nothing material beyond the allegations which are contained in the complaint in his first suit. The allegations in that suit are reintroduced in the cross bill word for word, and the relief prayed for in the cross bill is the same. From all the facts thus appearing in complainant's original bill, in the answer and the cross bill of the defendant Harrison, it is plain that the matters set up in the answer and in the cross bill in regard to which the defendant seeks investigation in this suit are not proper subjects of inquiry herein, because not connected with the issues sought to be decided in the original bill, and it would result in great and unnecessary delay in the decision of this suit to reverse this judgment and direct an investigation into matters which are foreign to its merits. We are of opinion the court below committed no error in allowing complainant's exceptions to the answer and in sustaining his demurrer to the cross bill.

The decision thus arrived at includes the main question in the case. There are some few other matters to be reviewed.

Our further examination must proceed upon the finding of facts as made by the court below, for this being an appeal from the Supreme Court of a Territory those findings are conclusive upon this court. The jurisdiction of this court on such an appeal, apart from exceptions duly taken to rulings on the admission or rejection of evidence, is limited to determining whether the findings of fact support the judgment. *Stringfellow* v. *Cain*, 99 U. S. 610; *Neslin* v. *Wells*, 104 U. S. 428; *Eilers* v. *Boatman*, 111 U. S. 356; *Idaho and Oregon Land Company* v. *Bradbury*, 132 U. S. 509; *Mammoth Mining Company* v. *Salt Lake Machine Company*, 151 U. S. 447, 450; *Haws* v. *Victoria Copper Mining Company*, 160 U. S. 303; *Gildersleeve* v. *New Mexico Mining Company*, 161 U. S. 573; *Bear Lake and River Water Works and Irrigation Company* v. *Garland*, 164 U. S. 1, 18.

Objection is made to that portion of the decree which holds the defendant Harrison liable as an individual for the repayment of the amount of the assets of the estate found in his possession. The findings of fact amply justify this action of the court. It is found that immediately upon the intermarriage of the defendant Harrison with the widowed mother of the minor he took entire charge and control of her affairs, including the assets of the minor's estate; that he reduced them to money, mingled the same with his own funds, deposited them in bank to his individual credit and at the time of the final decree he retained the same subject to his individual control. The court also found that he made reports in the lifetime of his wife, and in her name to the probate court, which contained false entries to the advantage of his wife, and that together they obstructed the distribution of the estate among the heirs; that upon the death of his wife on the 20th of October, 1889, he was in possession of these assets with full knowledge of their trust character, and after her death he refused to pay over on demand, to the complainant as the sole surviving administrator of the estate of the minor, the assets pertaining to that estate. These facts show a persistent, deliberate and successful attempt to secure and retain the assets of this estate and to convert them to his own use

individually. The facts found show that he was guilty of such conversion. Cases are cited by defendant's counsel where payments wrongfully made by an administrator to a third person could not be recovered directly from such third person at the suit of a creditor of the estate, the estate itself not being insolvent. Those cases and the one at bar have no resemblance to each other. This is a case where the whole assets of the estate have been wrongfully and knowingly taken and converted to the individual use of this defendant, and the action is brought to recover the same by the sole surviving administrator of the estate. Nor is it a question of following the specific property which was taken by the defendant. The finding is that he reduced the assets and property of the estate to money and mingled the same with his own funds, and has kept control of them ever since. The question of identification has nothing to do with the case. It is a bald case of the conversion of the whole estate of the minor, and his liability to pay it back is plain and clear.

Nor did the court below err to the prejudice of the defendant in the matter of charging him with interest at six per cent on the amount of the assets converted by him. The interest is charged by reason of his conversion of the whole assets of the estate. It is not a mere mingling of the funds with his own, while recognizing his liability to repay them and having them at the same time ready to respond when demanded. It is a wholesale conversion of the entire assets. The facts found make the inference perfectly clear that such conversion was intended from the time of his marriage with the mother of the minor. His false entries in the reports are very strong evidence in that direction.

Neither is it a question of what profits (if any) have been made by an individual who has mingled trust funds with his own and used them for his personal benefit, although never denying his liability to account. In such cases it is sometimes proper to inquire what profits have been made in order to charge the trustee with their amount, if greater than the usual rate of interest. This is not such a question. The defendant has, without the least right or title, taken moneys

belonging to the estate of a deceased minor, and converted them substantially to his own use, while denying the right of the administrator of such estate to the possession thereof. He is properly charged, at least, with the usual interest without investigation into the question of what profits he may have made.

That portion of the decree which authorizes the complainant as administrator to retain his statutory commissions upon the full fund found due from the defendant is objected to, and the claim is made that he is not entitled to commission on any other sum than that which he actually receives and pays out. The decree determines the amount due from the defendant to the complainant as administrator. Strictly speaking, the complainant was entitled to a decree for the payment of that full sum by the defendant, after which he would be paid the distributive share legally coming to him. If that course had been followed and such a decree given, the complainant would have been entitled to his statutory fees, as administrator, upon the amount thus paid in; but by the favor of the court, the defendant Harrison was permitted, instead of making this formal payment, to retain in his possession the seventeen twenty-sixths of the estate which the court decided he would be entitled to receive from the administrator, upon his making distribution of such estate to the parties entitled to it. The court in pursuance of this course did not relieve the estate from the payment of the full amount of the commissions of complainant as administrator which he would have been entitled to, had the amount which the defendant retained been actually and physically paid over into his hands. As to this, the defendant has no good ground of complaint.

The defendant also objects to the allowance of the solicitor's fee which is charged against the fund. We think no error arises from this action of the court below. By the exertions of the solicitor the fund was recovered, and it was properly made to bear some portion of the expense of its administration. The amount was within the judicial discretion of the court, and in fixing that amount the trial court could proceed upon its own knowledge of the value of the solicitor's services.

*Trustees* v. *Greenough*, 105 U. S. 527; *Fowler* v. *Equitable Trust Co.*, 141 U. S. 411, 415.

These are substantially all the questions which arise upon the appeal of the defendant Harrison.

Upon the cross appeal of the complainant he seeks to modify the judgment of the Supreme Court in regard to the parties. to the distribution, as he claims that the fund should be distributed, one half to the administrator of the deceased mother of the minor and the other half among his twelve half brothers and sisters, (children of the minor's father,) to the exclusion of the minor's half brother, Grover William Harrison, (the son of his mother by her husband Harrison,) who by the judgment of the court is permitted to share in such distribution. As the trial court made that decree and the complainant did not appeal from it, and the Supreme Court has simply affirmed that provision, the complainant's appeal from the latter decree does not, in our opinion, bring up this question for review. All that the complainant could claim in the Supreme Court was the affirmance of the judgment as given in the court below, because, as he had not appealed from it, he could not be heard to ask for its modification or reversal. When the Supreme Court affirmed that provision of the decree the complainant's appeal from that court would not bring the propriety of the provision for distribution before us.

Upon his cross appeal the complainant also asks for a modification of the decree with regard to the rate of interest charged against defendant, claiming it ought to be 12 instead of 6 per cent. We cannot interfere with the rate charged in the original decree, because the complainant has not appealed therefrom, and we do not think we ought to interfere with the rate of 6 per cent charged by the Supreme Court upon the total amount of the original decree from the time it was entered. It was to a certain extent discretionary with the latter court, and we think we are not called upon to alter and increase the rate charged by that court.

Although the complainant herein did not appeal from the original decree entered by the trial court, yet upon defendant Harrison's appeal therefrom the Supreme Court modified the

decree in some particulars, and specially in regard to costs, charging them upon the fund instead of against the defendant Harrison individually, as was the decree below. This was a modification of the judgment against the interest of and unfavorable to the complainant herein, as it reduced the amount of the fund for distribution. This question can be reviewed upon the complainant's cross appeal. We are of opinion that there was no proper ground for the modification of the decree as to costs made by the trial court.

The defendant Harrison, by the finding of the court, has wilfully obstructed the distribution of the assets of this estate, and by his misconduct has rendered it necessary that the complainant should obtain possession of them by the institution of this suit, and the necessity for commencing it arose entirely out of his wrongful conduct. This is the finding as approved by the Supreme Court of the Territory. The other findings, showing the false accounts, the wrongful conversion of these moneys, and the wrongful and persistent refusal to pay them over, on demand made by the administrator, altogether make out a gross case against the defendant, and leave no reasonable foundation for permitting him, as the Supreme Court does, to defend this action entirely at the expense of the fund and with no personal responsibility for costs. We see no plausible ground for this privilege.

A clerical error seems to have been made in the distribution by the Supreme Court. One twenty-sixth part of the estate is undisposed of by the judgment. It provides for the payment of seventeen twenty-sixths to defendant Harrison, and distributes the remaining nine twenty-sixths, one ninth to each of *eight* named distributees. One name has been accidentally omitted. This can be corrected on application by the court below.

The provision making all the costs payable out of the fund cannot stand, and the decree should charge defendant Harrison with costs personally as in the original decree entered by the trial court, with the exception that the amount of the fee of the special master is retained at $500. All the costs in this court must be paid by the defendant Harri-

son personally. The decree of the Supreme Court of New Mexico is therefore

*Reversed on the cross appeal of Perea, and the cause remanded with instructions to enter judgment in conformity with this opinion, with liberty to change the distribution upon application if it shall appear proper.*