## MILLS et al. v. SHERMAN et al.

Circuit Court of Appeals, Sixth Circuit.    May 12, 1927.

### No. 4747.

1. Receivers ⬤⟳116—Courts of equity may modify, approve, or disregard unauthorized contract made by their receivers.

Courts of equity are at liberty to use a wide discretion in dealing with unauthorized contracts made by their receivers, and may modify, approve, or disregard them entirely, as shall appear to be just.

2. Receivers ⬤⟳96—Attorney held properly allowed compensation from fund recovered under contract with receiver, though it was not approved by court (Transportation Act 1920 [41 Stat. 456]).

Though contract between attorney and receiver for securing settlement with government of claims arising out of operation of railroad under six months guaranty, in accordance with Transportation Act of 1920 (41 Stat. 456), was not approved by court, allowance of compensation to attorney from fund recovered was properly granted, as against claim of purchasers of railroad founded on foreclosure decree conveying property free from all claims and rights subject to compliance by purchasers with conditions imposed by decree and any order thereafter entered.

Appeal from the District Court of the United States for the Northern Division of the Eastern District of Michigan; Arthur J. Tuttle, Judge.

In the matter of the receivership of the Detroit, Bay City & Western Railroad Company, wherein A. Lawrence Mills, John R. Gray, and others presented claims to a certain fund recovered from the United States government by Charles T. Sherman for the receiver. From a decree ordering payment to Charles T. Sherman of a certain percentage of the fund collected, and leaving for future

determination the question as to who was entitled to the .remainder, ·A. Lawrence Mills and John R. Gray appeal. Affirmed.

The Detroit, Bay City & Western Railroad was operated by the Director General of Railroads during federal control. Succeeding that period was what is known as the "guaranty period," during which, under the Transportation Act of 1920 (41 Stat. 456), the railroads could operate for six months under a government guaranty of net earnings. The Detroit Company elected to operate on that basis, and at the expiration of that period made a settlement with the government of all claims arising out of its operation under the guaranty. Subsequently it went into the hands of a receiver, and in the summer of 1924 appellee, Sherman, was employed by the receiver to present additional claims against the government arising from the operation during the guaranty period. The receiver thought that, in view of the former settlement, the efforts of Sherman to procure an additional allowance would be futile, and accordingly failed to ·report the employment to the court or to procure its approval thereof. At á foreclosure sale thereafter held appellants purchased all the assets of the company, "except cash in the receiver's hands and receiver's accounts and bills receivable," free from all claims and rights of any of the creditors or stockholders of the company and all persons claiming through or under them or through or under the receiver. The special master and the receiver executed deeds conveying the property to the purchasers.

In the meantime Sherman had been prosecuting the claim for additional compensation, and shortly thereafter collected $52,779.99, to which claims were made by the purchasers of the railroad, the trustee for certain mortgage bond holders, and various creditors of the company. None of them had known of the existence of the claim prior to the consummation of the sale. Sherman claimed under his contract the right to 50 per cent. of the amount recovered. The petition of the purchasers asking that the fund be paid to them was referred to a special master for hearing and report, who recommended to the court in his report that the contract with Sherman be modified and that he be allowed as a fee for collecting the claim an amount equal to 25 per cent. thereof, and that other questions affecting the several claims of the purchasers, trustee, and other creditors, be reserved for future determination, together with the question as to whether Sherman's compensation should be charged against the fund collected. Exceptions were filed to the re-port of the master, and after hearing a decree was entered by the court sustaining the findings of the master and ordering that Sherman be paid 25 per cent. of the fund collected by him from the Government, but leaving for future determination the question as to who was entitled to the remainder. It is from this order that the purchasers have appealed.

George L. Wire and Arthur C. Wetterstorm, both of Chicago, Ill. (J. S. Lord and C. L. Cobb, both of Chicago, Ill., on the brief), for appellants.

John C. Bills, of Detroit, Mich. (Stevenson, Butzel, Eaman & Long, of Detroit, Mich., on the brief), for appellees.

Before DENISON and MOORMAN, Circuit Judges, and COCHRAN, District Judge.

MOORMAN, Circuit Judge (after stating the facts as above). The questions argued deal in one form or another with two inquiries: Whether the court was right in modifying the contract, and allowing Sherman compensation thereunder as modified; and whether it was right in ordering the amount allowed paid out of the fund which he collected from the government. Neither of them involves, in our opinion, a determination of the ownership of the balance of the fund as between other claimants.

There can be no doubt that the receiver entered into a contract with Sherman, agreeing to pay him for prosecuting the claim 50 per cent. of the amount recovered. We assume, as seemingly it is conceded by counsel for Sherman, that the making of such a contract without authority from the court was beyond the power of the receiver, and we disregard wholly the questions of fact argued, as there is ample, if not compelling evidence to support the findings of the master.

[1] Proceeding upon the hypothesis that the contract with the receiver was unenforceable, the inquiry arises whether, after it was carried out in good faith by Sherman, the court might, in the exercise of its equity powers, adopt and approve it, rendering it retroactively effective. Upon this proposition we have no doubt—certainly as to claimants, who in the meantime had not acquired unqualified rights. It is a principle of equity jurisprudence that courts of equity are at liberty to use a wide discretion in dealing with unauthorized contracts made by their receivers, and may modify, approve, or disregard them entirely, as shall appear to be just. Lehigh Coal & ·Navigation Co. v. Central Railroad Co., 35 N. J. Eq. 429; Wigton v. Coal Co.,

270 Pa. 420, 113 A. 425; Chicago Deposit Vault Co. v. McNulta, 153 U. S. 554, 14 S. Ct. 915, 38 L. Ed. 819.

[2] Having the right to exercise this power of approval to the detriment of the receiver or creditor, the question is whether the same right exists as against an intervening purchaser, such as appellant, who, without any knowledge of the existence of the pending claim, purchased the railroad and all its assets, "except cash in the receiver's hands and receiver's accounts· and bill receivable." Sherman does not contend that the excepted property included the claim against the government, but insists that he is entitled, under many authorities cited, including Trustees v. Greenough, 105 U. S. 527, 26 L. Ed. 1157; Hobbs v. McLean, 117 U. S. 567, 6 S. Ct. 870, 29 L. Ed. 940, and Harrison v. Perea, 168 U. S. 311, 18 S. Ct. 129, 42 L. Ed. 478, to compensation out of the fund which he reclaimed. Appellants are not concerned with his compensation, if it is not to be paid out of that fund. Their position is that reimbursement for attorney's fees and expenses incurred in recovering a trust fund cannot be had by any one except a person who had a common interest with others in the fund and who at his own expense took proceedings to recover it; that the contract with Sherman was not an assignment of the claim against the government, which was unassignable under section 3477 of the Revised Statutes (Comp. St. § 6383) as construed in Ball v. Halsell, 161 U. S. 72, 16 S. Ct. 554, 40 L. Ed. 622; and even if the court had the power to modify and approve the contract and, as between Sherman and other claimants, to allow him compensation out of the fund recovered, that it was without power to make such an allowance as against them because, as they claim, their rights as purchasers became fixed as of the date of the sale and conveyance.

The contract with Sherman was clearly not an assignment of any part of the claim against the government; but, under the principles announced in the cases relied upon by him, it was, we think, within the power of the court, in the absence of an unqualified legal or better equitable right in others, to charge against the fund the expenses incurred by the receiver in its collection. The contention of appellants as to their equitable rights overlooks, we think, important considerations of which a court of equity must take cognizance, among them the fact that appellants did not know such a claim was in existence when they purchased the railroad, and did not, in making their bid, expect to receive anything more than they have already received. After they have received all that they thought they were purchasing, are they in position, upon learning of the claim, to ask a court of equity to give them the proceeds thereof, and to impose upon others the burden of paying for its collection, or else deprive appellee of the compensation to which he is justly entitled? This goes only to the ethical view of their position, and, while entitled to great weight, must obviously yield to any clear legal precept that confers upon them an unqualified or superior right. It is said for them that the right is found in the fact of their purchase of the property between the making of the contract and its approval by the court, under which they acquired a vested right which even a court of equity may not disregard.

The contention would have great force in some circumstances, but it is founded necessarily upon the foreclosure decree and the rights acquired thereunder; and in that decree the property, although conveyed free from all claims and rights of the railroad company, receiver, or any creditor, stockholder, or other person claiming by, through, or under any of them, was sold "subject to compliance by the purchaser with all the conditions imposed upon the purchaser by this decree and by any order hereafter entered in this consolidated cause." We are told by counsel, and we assume it to be true, that such a clause as this is always inserted in a decree of sale or order confirming a transfer of railroad property after receivership; and it seems very probable, as we are also told, that it is added for the very purpose of giving the court the power to dispose of equitable controversies not known at the time, but which may develop afterward, and which, except for such a clause, would unfortunately be foreclosed by the generality of the earlier language in the decree. If construed to mean nothing more than a reservation of power to enter formal or the usual orders touching the sale of the property, such as setting aside or confirming the sale, a power that otherwise existed, the provision would be meaningless. It was, we think, intended to and did reserve in the court the right to dispose of conflicting claims to the property during the pendency of the consolidated cause, including the right, when the occasion arose, to subject this fund to the equity of the one whose efforts brought it into court. Appellants took the property subject to the exercise of this power, and, regardless of who owns the balance, the court rightly held that appellee should receive his compensation from the fund that he had brought into court. In doing so there was no deprivation of any vested right in the property, nor any modification of the order of sale.

Judgment affirmed.