ANHEUSER–BUSCH, Inc., v. COHEN et al.

District Court, D. Maryland. January 13, 1930.

No. 1381.

Paul Bakewell, of St. Louis, Mo., and Barton, Wilmer, Ambler & Barton, of Baltimore, Md., for plaintiff.

Isaac Lobe Straus, of Baltimore, Md., for defendants.

WILLIAM C. COLEMAN, District Judge. The questions here presented involve trade-mark infringement and unfair competition. The bill of complaint, summarized briefly, charges that the defendants are infringing the trade-mark rights of the plaintiff and are guilty of unfair competition, in that they are using the name "Budd-Wise" on labels used on syrup made and distributed by them, claimed to contain pure barley malt syrup, plain and malt hop, and also on a malt syrup, plain and hop-flavored, in simulation and in fraud of the plaintiff's trade-mark name "Budweiser," which the plaintiff alleges it is using throughout the United States, including the city of Baltimore, on its barley malt syrup, and which it alleges it and its predecessors in business have used continuously on their various malt products since 1876. There is a prayer for injunctive relief, and for an accounting of profits and damages by reason of the alleged infringement and unfair competition.

The bill of complaint is eleven pages in length, and the answer, exclusive of numerous exhibits, is twenty-six, with respect to the major portions of which plaintiff has filed a motion under the twenty-first equity rule (28 USCA § 723) to strike out, on the ground that the various matters contained in the portions of the answer specifically set forth in the motion are redundant, impertinent, and scandalous. Summarized, the allegations of the answer against which the motion is directed may be stated as four separate contentions, as follows:

First, that heretofore (that is, prior to 1920, when the National Prohibition Act became effective), the sole and only product which the plaintiff and its predecessor manufactured, sold, and distributed under the trade-name "Budweiser" was intoxicating lager beer. Second, that after the effective date of the National Prohibition Act the plaintiff applied itself to the production and sale of barley malt syrup and hop-flavored

barley malt syrup, which is to be distinguished from malt sugar syrup, which the defendants manufacture and distribute; that under the name "Budweiser," which is pre-eminently and notoriously an intoxicating beer name, plaintiff's product is sold and known, and is intended by plaintiff to be sold primarily for the manufacture of intoxicating home-brew beer, in violation of section 18, title 2, of the National Prohibition Act (27 USCA § 30); and that it is unfit for the legitimate uses of bread baking and the making of malted milk and candy, for which legitimate uses defendants' product is manufactured and sold. Third, that plaintiff's registered trade-mark No. 180,378, referred to in the bill of complaint, is not for a malt syrup, but for a malt sugar syrup; that plaintiff's later trade-mark No. 203,128, referred to in the answer, is for a barley malt syrup; and that plaintiff is guilty of practicing a fraud and deception upon the court in not pleading in its bill the last-named registered trade-mark. Fourth, and lastly, that these registered trade-marks, No. 180,378 and No. 203,128, of the plaintiff were not granted until February 26, 1921, and September 8, 1925, respectively; that plaintiff's use of the trade-mark "Budweiser" on its barley malt syrup and hop-flavored barley malt syrup did not antedate the years 1921 and 1925, respectively, whereas defendants have been using the name "Budd-Wise" on such products of their own since 1918; and that on March 1, 1921, a copyright for defendants' label "Budd-Wise Brand" was obtained from the Commissioner of Patents by a previous owner of said label, who assigned it to the defendants.

Plaintiff's position must be judged by the facts as they were when this suit was commenced, not by the facts of a different condition at an earlier time. Coca-Cola Co. v. Koke Co., 254 U. S. 143, 41 S. Ct. 113, 65 L. Ed. 189. Thus there can be no doubt that the first contention, which relates to what plaintiff did prior to 1920, and also so much of the second contention as relates to plaintiff's past conduct, except that which was reasonably proximate to the commencement of this proceeding, are irrelevant, and therefore "impertinent," within the meaning of that word as used in equity rule 21. Harrison v. Perea, 168 U. S. 311, 18 S. Ct. 129, 42 L. Ed. 478.

Turning to the remaining part of the second contention, namely, that plaintiff, at the time the bill of complaint was filed, was deliberately and intentionally selling its product primarily for the manufacture of intoxicating home-brew beer in violation of the National Prohibition Act, and that its product is not fit, as is defendants' product, for legitimate uses, the court also concludes that this contention is irrelevant to the present controversy. Section 21 of the Trade-Mark Act (15 USCA § 101) provides that "no action or suit shall be maintained under the provisions of this subdivision of this chapter in any case when the trade-mark is used in unlawful business, or upon any article injurious in itself. * * *." The court construes this provision of the statute as being nothing more than a statement of a long-established equitable principle. Nor has the court been referred to any cases which place a broader or different construction upon this language. In other words, the effect of this provision of the law is to be determined by the interpretation which courts of equity have given to the defense of illegal conduct on the part of a plaintiff, when invoked by a defendant under circumstances similar to those existing in the present case. In short, unlawful conduct of the plaintiff is, for the purposes of this proceeding, a collateral issue and furnishes no ground for defense.

Unlawful use of a trade-mark can give no license to the general public to infringe that trade-mark, regardless of whether the infringement be in connection with legitimate or unlawful trade. If the plaintiff is in fact violating the criminal law, he can be punished in the proper forum. Unless and until such violation is established, the question is not properly to be considered in a proceeding of this kind. The restriction on actions for infringement, contained in the provision of the statute above quoted, is intended to be confined to such cases where the unlawfulness of the plaintiff's business is an established fact. Merely the charge by defendants that plaintiff is engaged primarily, or even exclusively, in an illegal enterprise, and that its product is unfit for lawful use, cannot alter the situation. Board of Trade of the City of Chicago v. L. A. Kinsey Co. (C. C. A.) 130 F. 507, 69 L. R. A. 59.

The same equitable doctrine is applicable to patents, and, as was said by Judge Sanborn, in United States Fire Escape Counter-balance Co. v. Joseph Halsted Co. (D. C.) 195 F. 295, at page 297: "By the great weight of federal authority, the infringer of a patent cannot justify his acts by attacking complainant as a trust or unlawful combination. This is simply saying, 'You're another.' Complainant may be an obnoxious combination, but that does not excuse defendant from appropriating its property. Such a

doctrine would justify stealing stolen goods from the thief, or despoiling any real or supposed trust of all its holdings." See, also, Mills v. Industry Novelty Co. (D. C.) 230 F. 463, and cases cited.

All of the remaining allegations against which the motion is directed are also irrelevant and immaterial. Indeed, they are so palpably frivolous as to indicate a deliberate attempt to cloud the true issue by a mass of irrelevant matter. Therefore the reasons for granting the motion to strike them out may be compressed into brief statements.

■ First, registration of a trade-mark confers no rights and limits none, but is a mere procedural advantage, depending upon common-law ownership. United Drug Co. v. Theodore Rectanus Co., 248 U. S. 90, 39 S. Ct. 48, 63 L. Ed. 141. That is to say, plaintiff's right, if it exists, to noninterference by the defendants in the use of the trade-name "Budweiser," is determined by common law.

■ In 1923, the Circuit Court of Appeals for the Second Circuit decided that the present plaintiff and its predecessor, by long use and extensive advertising, namely, for a period of more than 40 years, had created a market for its various products under the trade-name "Budweiser," to characterize its beer and malt liquor, and enjoined a manufacturer of malt syrup from the use of the. name "Budweiser Malt Syrup," who claimed the right to do so on the ground that beer is not a malt product. The court declared that the name itself suggested that the product is a by-product of plaintiff's manufacture. Anheuser-Busch v. Budweiser Malt Products Corp., 295 F. 306; see also Id. (D. C.) 287 F. 243. What was there said completely answers the argument of the defendants in the present suit, to the effect that, since their and the plaintiff's products are different, and not in fact in competition, there is no basis for injunctive or other relief, apart from the question of similarity between the names "Budweiser" and "Budd-Wise," hereinafter considered. We adopt the reasoning of the New York Circuit Court of Appeals in the above decision, because entirely sound and embodying the unquestioned weight of authority throughout the federal courts, including the decisions of this court. So, even if we assume defendants could prove the truth of their allegations as aforesaid, such proof would be inconsequential. It is scarcely necessary to refer to more recent cases.

■ The doctrine of unfair competition simply means that no one should be allowed to sell his goods as those of another. To be sure, this rule is usually invoked when there is an actual market competition between the analogous products of the complainant and defendant. But, as was said in Vogue Company v. Thompson-Hudson Company (C. C. A.) 300 F. 509, 512: "There is no fetich in the word 'competition.' The invocation of equity rests more vitally upon the unfairness. If B. represents that his goods are made by A., and if damage therefrom to A. is to be seen, we are aware of no consideration which makes it controlling whether this damage to A. will come from market competition with some article which A. is then manufacturing or will come in some other way. The injury to A. is present, and the fraud upon the consumer is present; nothing else is needed." See, also, Vogue Co. v. Vogue Hat Co. (C. C. A.) 6 F.(2d) 875; Id. (C. C. A.) 12 F. (2d) 991.

Again, as was said by Judge Morris in Rogers, Ltd., v. Majestic Products Corp. (D. C.) 23 F.(2d) 219, 220: "The goods capable of being so passed off are not limited to those that are identical, or even to those that have the same descriptive properties. Many articles, quite dissimilar in their appearance, properties, and use, may nevertheless bear such relation to each other, and be so associated in the mind of the public, that confusion and deception touching their respective origins will follow as a natural consequence, if their dress or marks are similar."

And more recently, as was said in the case of Yale Electric Corporation v. Robertson (C. C. A.) 26 F.(2d) 972, 974, by Judge Hand: "It has of recent years been recognized that a merchant may have a sufficient economic interest in the use of his mark outside the field of his own exploitation to justify interposition by a court. His mark is his authentic seal; by it he vouches for the goods which bear it; it carries his name for good or ill. If another uses it, he borrows the owner's reputation, whose quality no longer lies within his own control. This is an injury, even though the borrower does not tarnish it, or divert any sales by its use; for a reputation, like a face, is the symbol of its possessor and creator, and another can use it only as a mask. And so it has come to be recognized that, unless the borrower's use is so foreign to the owner's as to insure against any identification of the two, it is unlawful."

■ The next question, therefore, is whether the name "Budd-Wise" is so similar in appearance, display, and sound to the name "Budweiser" that it is calculated to deceive the public. The similarity is so striking, both

to the eye and the ear, that nothing more need be said. That deception must result is inevitable. The comparatively slight difference in spelling and display is but a part of a self-evident scheme to deceive. Under such circumstances, intention to deceive must be presumed.

Lastly, defendants' copyright of the label "Budd-Wise Brand," obtained in 1921, is utterly immaterial to the present controversy, because a certificate of copyright is not a certificate of trade-mark, and therefore gave neither to the defendants nor to their assignors any trade-mark rights whatsoever. Higgins v. Keuffel, 140 U. S. 428, 11 S. Ct. 731, 35 L. Ed. 470. It therefore becomes unnecessary to refer to the other arguments advanced by plaintiff, in support of its contention that this copyright of defendants is totally irrelevant to the present issue. The court cannot overlook the fact that defendants' label contains the words "Reg. U. S. Pat. Off.," thereby intending to indicate to the public that the name "Budd-Wise" has been registered in the United States Patent Office, when, as a matter of fact, as is admitted, no such registration was ever obtained, but merely a copyright was obtained, which is of no avail for the purposes here involved. Defendants assert that this designation accompanying the name "Budd-Wise" must be taken as an unintentional misrepresentation. The court, under all the circumstances, is unable to view it in this light, but rather that it represents an intentional fraud and deception upon the public, and is but another part of the deliberate attempt by defendants to select and use a name directly infringing upon the long-established trade-name and good will of the plaintiff. In so far as defendants' rights under the Maryland law are concerned, that law cannot dispossess plaintiff of its previously acquired rights. See United Drug Co. v. Rectanus Co., supra.

Under rule 21, it is within the discretion of the court, upon granting a motion such as is now granted, to allow, or not to allow, defendants to recast their answer. In the present case, it would be futile to grant such permission, because when shorn of the irrelevant allegations, there is nothing left in the answer which can conceivably raise a valid defense, or which calls for the proving of any facts not already admitted, or which, if proof were furnished, would do other than substantiate and strengthen the claim of infringement. As has already been pointed out, plaintiff's use of its trade-mark "Budweiser" on various malt products so far antedates, in Baltimore and throughout the United States, by a great many years, every claim of the defendants respecting their use of the name "Budd-Wise" on their product, as to dispose finally of any possible right to use it on the ground of prior use. This being true, and the deceptive character of the name "Budd-Wise" being beyond question, the primary allegations of the bill of complaint are to be taken as having been proved to the entire satisfaction of the court. Accordingly the court finds that without further hearing plaintiff is entitled to a decree permanently enjoining defendants from further use of the name "Budd-Wise," or any other name or mark in simulation or in imitation of the name "Budweiser," and is also entitled to have the case referred to a special master, to determine and report respecting the amount of damages and profits the plaintiff may justly be entitled to.