25 P.(2d) 806

In re KEEL'S ESTATE.

HANNY v. JOYCE et al.

No. 3769.

Supreme Court of New Mexico.

July 31, 1933.

Rehearing Denied Sept. 29, 1933.

Hurd & Crile, of Roswell, for appellant.

O. O. Askren, of Roswell, for appellees.

WATSON, Chief Justice.

Albert Hanny filed in probate court his final account as administrator of the estate of Thomas Warren Keel. The distributees objected to the claims made for administrator's and attorneys' fees. Over these objections the probate judge allowed an administrator's fee of $3,500, and attorneys' fees of $3,000.

The matter having been appealed to the district court, these fees were disallowed, and, having already been paid, the administrator was ordered to reimburse the estate therefor, with interest. After having appealed to this court, the administrator died, and the cause has been revived in the name of Jack Hanny, his administrator.

The learned trial judge made extensive findings. His more important conclusions were that the administration was unnecessary, improper, and detrimental, and for that reason entitled the administrator and his attorneys to no fees; and, in the alternative, that no property came into Mr. Hanny's hands as administrator except $2,948.21, cash transferred from guardianship account, and $10,005.80, the proceeds of a life insurance policy; that the administration was merely

perfunctory, calling for slight skill on the part of attorneys; and that, if the administration had been necessary, $129.54 (1 per cent. of the cash and insurance) would have been adequate compensation to the administrator, and $100 adequate as attorneys' fees.

The material facts appear as follows: J. L. Keel, father of Thomas Warren Keel, died testate in January, 1929. Aside from a few specific devises and bequests to his four children individually, and a small annuity to his mother, the estate was left in undivided shares to the children, all of whom were minors. Albert Hanny, being the survivor of the two nominated in the will, qualified and acted throughout as sole executor. He was also appointed and served as guardian of the minors. As executor he took into his possession $200,000 of United States registered bonds, and approximately $185,000 in cash, notes, mortgages, and oil royalties. In lieu of statutory allowances, he elected to take as compensation 5 per cent. of the appraised value of personal property, as provided by the will. He paid himself as executor approximately $17,500, and paid his attorneys $10,000. As guardian he paid himself about $3,000 and paid his attorneys $1,500.

On August 5, 1929, but a few months following the death of the father, Thomas Warren Keel died intestate. On the petition of J. L. Keel, Jr., one of the appellees, who had in the meantime attained his majority, Mr. Hanny was appointed administrator and proceeded to inventory the estate and have it appraised.

The inventory listed a diamond ring, a bequest from the father, and an undivided one-fourth interest in each asset of the father's estate, already in his possession as executor. Each item was duly appraised, the ring at $1,000.

The administrator collected $10,005.80 upon a policy of insurance upon his decedent's life and transferred $2,948.21 from his joint guardianship account. Certain amounts of cash, proceeds of liquidation, seem also to have been transferred from his account as executor to his account as administrator. At the end, he segregated one-fourth of the $200,000 of registered bonds, transferring them from Hanny, executor, to Hanny, administrator, and thence to the three distributees..

Except for these transactions, the execution of J. L. Keel's will does not seem to have been affected by the death and administration of Thomas Warren Keel. The administrator, of course, never had manual possession of undivided quarter interests in notes, mortgages, and other personalty, a large part of which was not liquidated, but turned over in kind to the distributees. The actual distribution under both estates was simultaneous, the same beneficiaries and practically the same assets being involved in each.

In so far as the fixing of administrator's and attorneys' compensation was matter of judicial discretion, these facts we think support the decision appealed from. But appellant contends that the court erred in holding this administration unnecessary and improper; and that, the administration having been

properly granted, compensation was a mere matter of mathematical calculation, it being fixed by statute, and not being within judicial discretion.

■ We think the first position is well taken. It is true that the two estates were largely the same in their assets and with respect to the parties interested in them. Nevertheless, they were distinct entities. It is immaterial that there was but one small debt outstanding against Thomas Warren Keel, aside from the funeral expenses. There existed the legal possibility of his share of the personal property and even his real estate being subjected to the payment of debts. To his administrator and to him only could the executor legally distribute a one-fourth interest in the estate. We think the trial court to have been in error in disallowing all fees upon the theory that the administration was unnecessary and improper.

■■ We do not agree with the second contention. In the first place, construing 1929 Comp. St. §§ 47-701 and 47-205 together, we think that commissions on cash and proceeds of policies of insurance are within judicial discretion, subject only to the statutory maximum. We shall respect, therefore, the trial court's holding that, if administration had been proper, and considering $2,948.21 in cash and $10,005.80 as the proceeds of insurance policy to have come into the administrator's hands, a commission of 1 per cent ($129.54) would be adequate compensation for the administrator and $100 a proper attorneys' fee.

In the second place, the statutory policy of allowing attorneys' fees in an amount equal to the administrator's compensation is not without exception. Such fees may "be otherwise fixed by the court upon a showing of proper cause therefor." 1929 Comp. St. § 47-132. We cannot doubt that the peculiarities of this case, as disclosed above, constitute proper cause for "otherwise fixing" them. We feel bound by the trial court's conclusion that $100 would be adequate.

■ But 1929 Comp. St. § 47-701 plainly provides for specified commissions to administrators "on all amounts * * * upon property at its appraised value which shall come into their hands as such." Cash, proceeds of life insurance policies, and real estate are excluded. As to the other property, we cannot doubt that the commission accrues as of right and cannot be disallowed by the court.

■ It is essential to the right, however, that the property come into the administrator's hands. Nothing could be claimed as of right for the one-fourth interests which were never segregated and were incapable of manual possession. Whether compensation on account of such interests might have been allowed in discretion is a question not here argued.

■ The bonds, as stated, were actually segregated. As executor, Mr. Hanny actually had one-fourth in number and value distributed and transferred in registry to himself as administrator. We cannot escape the conclusion that these bonds, appraised at $50,000, came into the administrator's hands, and

that it was error to deny the statutory commission on that property.

■ Considering that this particular one-fourth of the bonds was to be distributed exactly as the other three-fourths, the trial court was of opinion that this circuity of transfer was unnecessary and could accomplish no other substantial result than to lay the foundation for a claim for a second commission. Whether necessary or not, it was legal and proper, and brought the property within the terms of the statute. So long as the Legislature maintains an arbitrary and inelastic standard of compensation, the courts are bound by it.

■ The trial court also announced the view that government bonds were to be deemed "cash" within the meaning of the statute. We think the statute incapable of such interpretation.

It can hardly be questioned that the diamond ring came into the hands of the administrator.

In view of what we have decided, other questions argued by counsel require no consideration.

For the errors in denying all compensation on the ground that the administration was unnecessary, and in disallowing commissions on the government bonds and the ring, the judgment must be reversed. Upon the record before us a judgment could have been sustained if it had included an allowance of $2,700 on the bonds and ring, in addition to the 1 per cent. ($129.54) on the cash and insurance proceeds, and the $100 of attorneys' fees.

In the original brief appellant expresses the view that the cause should be remanded for new trial. Appellees demand an affirmance and a 10 per cent. penalty, upon the claim that the appeal was taken for purposes of delay. By the reply brief, appellant asks that the judgment of the district court be reversed and that of the probate court be reinstated. Each counsel has thus asked too much. There should either be a new trial or a modification of the judgment.

Doubtful if any good purpose would be served by awarding a new trial, we have concluded to reverse the judgment and to remand the cause, with a direction to modify the judgment so as to require appellant to refund to the estate of Thomas Warren Keel the sum of $3,670.46, instead of the sum of $6,500 as originally adjudged. It is so ordered.

SADLER, HUDSPETH, and BICKLEY, JJ., concur.

ZINN, J., did not participate.

On Motion for Rehearing.

WATSON, Chief Justice.

We have said that the *actual* distribution under both estates was simultaneous. Facts elaborately recited in the brief were fully understood and we think warranted the state-

ment as sufficient for the purpose. That theoretically or on paper the distributions were separate does not vary the result. The controlling fact, as to the undivided property, is that Mr. Hanny was able and saw fit to close the Thomas Warren Keel estate without reducing this property to his possession as administrator. He did not bring it within the terms of the statute as the basis of a claim for commission.

In addition to the authorities previously cited, appellants bring forward Harrison v. Perea, 168 U. S. 311, 18 S. Ct. 129, 42 L. Ed. 478. There, it is true, the administrator was allowed his commission, under the New Mexico statute, upon moneys which did not actually come into his hands. But he had sued for their possession and established his right. The result, reduced to its elements, amounted to payment by Harrison to the administrator and return to Harrison after deduction of the commission. The case is not persuasive here.

We see no good cause for a rehearing of this appeal. However, on the question of attorney's fees we are inclined to yield to the reasons urged upon us for a new trial, not to the extent of awarding a new trial ourselves, but to the extent of leaving further procedure herein to the judicial discretion of the trial court, with the powers as explained in State ex rel. Bujac v. District Court, 28 N. M. 28, 205 P. 716.

The motion for rehearing is denied. Our former judgment is vacated. The judgment appealed from will be reversed. The cause will be remanded, with a direction to proceed in accordance herewith. It is so ordered.

SADLER, HUDSPETH, BICKLEY, and ZINN, JJ., concur.