# THE COCA–COLA COMPANY *v.* THE KOKE COMPANY OF AMERICA ET AL.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE NINTH CIRCUIT.

No. 101.    Argued November 18, 19, 1920.—Decided December 6, 1920.

The defense that the plaintiff's trade-mark and advertisements convey fraudulent representations to the public affords but a narrow ground for refusing injunctive relief against an infringer who seeks to reap the advantages of the plaintiff's good will; and the defense must be carefully scrutinized. P. 145.

As respects this defense, the plaintiff's position must be judged by the facts as they were when the suit was begun, not by the facts of a different condition and an earlier time. P. 147.

Plaintiff's beverage, widely sold under the name "Coca-Cola," with

a picture of coca leaves and cola nuts on the labels, and containing certain harmless extractives from coca leaves and cola nuts, claimed to add flavor, with some caffein from the nuts and more superadded, originally contained also some cocaine derived from the coca leaves, and was once advertised as an "ideal nerve tonic and stimulant"; but long before this suit began, cocaine was eliminated, the article was advertised and sold as a beverage only, free from cocaine; and, for the public generally, the name came to signify the beverage itself, the plaintiff's product, rather than its ingredients. *Held*, that the continued use of the name with the picture was not a fraud depriving the plaintiff of the right to enjoin infringement and unfair competition in selling a like preparation under the name of "Koke"; but that the injunction should not restrain use of the name "Dope," a featureless word not specifically suggestive of "Coca-Cola" by similarity or in use, nor forbid manufacture and sale of the product, including the coloring matter. P. 145.

255 Fed. Rep. 894, reversed.

THE case is stated in the opinion.

*Mr. Frederick W. Lehmann,* with whom *Mr. Harold Hirsch, Mr. Frank F. Reed, Mr. Edward S. Rogers* and *Mr. Charles E. Rushmore* were on the briefs, for petitioner.

*Mr. Richard E. Sloan* and *Mr. Joseph W. Bailey,* with whom *Mr. Jesse M. Littleton* and *Mr. C. L. Parker* were on the briefs, for respondents.

MR. JUSTICE HOLMES delivered the opinion of the court.

This is a bill in equity brought by the Coca-Cola Company to prevent the infringement of its trade-mark Coca-Cola and unfair competition with it in its business of making and selling the beverage for which the trade-mark is used. The District Court gave the plaintiff a decree. 235 Fed. Rep. 408. This was reversed by the Circuit Court of Appeals. 255 Fed. Rep. 894. Subsequently a writ of certiorari was granted by this Court. 250 U. S. 637.

It appears that after the plaintiff's predecessors in title had used the mark for some years it was registered under the Act of Congress of March 3, 1881, c. 138, 21 Stat. 502, and again under the Act of February 20, 1905, c. 592, 33 Stat. 724. Both the Courts below agree that subject to the one question to be considered the plaintiff has a right to equitable relief. Whatever may have been its original weakness, the mark for years has acquired a secondary significance and has indicated the plaintiff's product alone. It is found that defendant's mixture is made and sold in imitation of the plaintiff's and that the word Koke was chosen for the purpose of reaping the benefit of the advertising done by the plaintiff and of selling the imitation as and for the plaintiff's goods. The only obstacle found by the Circuit Court of Appeals in the way of continuing the injunction granted below was its opinion that the trade-mark in itself and the advertisements accompanying it made such fraudulent representations to the public that the plaintiff had lost its claim to any help from the Court. That is the question upon which the writ of certiorari was granted and the main one that we shall discuss.

Of course a man is not to be protected in the use of a device the very purpose and effect of which is to swindle the public. But the defects of a plaintiff do not offer a very broad ground for allowing another to swindle him. The defence relied on here should be scrutinized with a critical eye. The main point is this: Before 1900 the beginning of the good will was more or less helped by the presence of cocaine, a drug that, like alcohol or caffein or opium, may be described as a deadly poison or as a valuable item of the pharmacopœa according to the rhetorical purposes in view. The amount seems to have been very small, but it may have been enough to begin a bad habit and after the Food and Drug Act of June 30, 1906, c. 3915, 34 Stat. 768, if not earlier, long before this

suit was brought, it was eliminated from the plaintiff's compound. Coca leaves still are used, to be sure, but after they have been subjected to a drastic process that removes from them every characteristic substance except a little tannin and still less chlorophyl. The cola nut, at best, on its side furnishes but a very small portion of the caffein, which now is the only element that has appreciable effect. That comes mainly from other sources. It is argued that the continued use of the name imports a representation that has ceased to be true and that the representation is reinforced by a picture of coca leaves and cola nuts upon the label and by advertisements, which however were many years before this suit was brought, that the drink is an "ideal nerve tonic and stimulant," &c., and that thus the very thing sought to be protected is used as a fraud.

The argument does not satisfy us. We are dealing here with a popular drink not with a medicine, and although what has been said might suggest that its attraction lay in producing the expectation of a toxic effect the facts point to a different conclusion. Since 1900 the sales have increased at a very great rate corresponding to a like increase in advertising. The name now characterizes a beverage to be had at almost any soda fountain. It means a single thing coming from a single source, and well known to the community. It hardly would be too much to say that the drink characterizes the name as much as the name the drink. In other words Coca-Cola probably means to most persons the plaintiff's familiar product to be had everywhere rather than a compound of particular substances. Although the fact did not appear in *United States* v. *Coca Cola Co.*, 241 U. S. 265, 289, we see no reason to doubt that, as we have said, it has acquired a secondary meaning in which perhaps the product is more emphasized than the producer but to which the producer is entitled. The coca leaves and whatever of cola nut is

employed may be used to justify the continuance of the name or they may affect the flavor as the plaintiff contends, but before this suit was brought the plaintiff had advertised to the public that it must not expect and would not find cocaine, and had eliminated everything tending to suggest cocaine effects except the name and the picture of the leaves and nuts, which probably conveyed little or nothing to most who saw it. It appears to us that it would be going too far to deny the plaintiff relief against a palpable fraud because possibly here and there an ignorant person might call for the drink with the hope for incipient cocaine intoxication. The plaintiff's position must be judged by the facts as they were when the suit was begun, not by the facts of a different condition and an earlier time.

The decree of the District Court restrains the defendant from using the word Dope. The plaintiff illustrated in a very striking way the fact that the word is one of the most featureless known even to the language of those who are incapable of discriminating speech. In some places it would be used to call for Coca-Cola. It equally would have been used to call for anything else having about it a faint aureole of poison. It does not suggest Coca-Cola by similarity and whatever objections there may be to its use, objections which the plaintiff equally makes to its application to Coca-Cola, we see no ground on which the plaintiff can claim a personal right to exclude the defendant from using it.

The product including the coloring matter is free to all who can make it if no extrinsic deceiving element is present. The injunction should be modified also in this respect.

*Decree reversed.*
*Decree of District Court modified and affirmed.*