## OAKLAND CHEMICAL CO. v. BOOKMAN.

Circuit Court of Appeals, Second Circuit.
December 5, 1927.

No. 166.

1. Trade-marks and trade-names and unfair competition ⚖3(1)—A descriptive mark is invalid as trade-mark (Trade-Mark Act, § 5 [15 USCA § 85]).

Under Trade-Mark Act, § 5 (15 USCA § 85), descriptive mark is invalid as trade-mark, since it does not advise public that goods come from single source, and protection of mark would trench on common speech, which should describe goods.

2. Trade-marks and trade-names and unfair competition ⚖3(1)—Generally mere misspelling of descriptive word is insufficient to make valid trade-mark (Trade-Mark Act, § 5 [15 USCA § 85]).

Generally mere misspelling of descriptive word is insufficient to make valid trade-mark, under Trade-Mark Act, § 5 (15 USCA § 85).

3. Trade-marks and trade-names and unfair competition ⚖3(3)—Word, to be valid as trade-mark, must indicate source of product.

It is not enough that meaning of word should not be clear, to be valid as trade-mark, but it must indicate source of product.

4. Trade-marks and trade-names and unfair competition ⚖1—Trade-mark must be good against all infringements or against none.

A trade-mark, simpliciter, must be good against all infringements, or against none; else question of its registry could not be decided in vacuo, as it must be.

5. Trade-marks and trade-names and unfair competition ⚖3(1)—Where true description of product in English language is an infringement, mark is bad as trade-mark.

Where true description of product in English speech is an infringement, mark is wholly bad as trade-mark.

**6. Trade-marks and trade-names and unfair competition** ⟨key⟩3(4½)—Word "dioxygen" held invalid as trade-mark for hydrogen dioxide, and was not entitled to protection against defendant's use of mark "peroxogen" (Trade-Mark Act, § 5 [15 USCA § 85]).

Under Trade-Mark Act, § 5 (15 USCA § 85), word "dioxygen" *held* invalid as trade-mark for hydrogen dioxide, and was not entitled to protection as against defendant's use of mark "peroxogen" for same product, since it would not indicate source of product, and would be infringed by words "dioxide" and "double oxygen," which describe class of substances to which product belongs.

Appeal from the District Court of the United States for the Southern District of New York.

Suit by the Oakland Chemical Company against Rose Nerenstone Bookman, doing business as the Peroxogen Company of America. From a decree denying plaintiff's motion for a preliminary injunction, and dismissing the bill, plaintiff appeals. Affirmed.

The parties are both citizens of New York and the jurisdiction of the District Court depended wholly upon the registration of the plaintiff's trade-mark, "Dioxogen," whose infringement by the defendant's mark, "Peroxogen," was the gist of the suit. Peroxide of hydrogen is a chemical product, so called because it consists of a molecule of two atoms of oxygen and two of hydrogen. Its use as a disinfectant is old, and the plaintiff began to make and sell it in 1890, under the name, "Peroxide of Hydrogen, O. C.," though its more proper chemical name is "dioxide of hydrogen," or "hydrogen dioxide." The plaintiff, after using the second of these names for a while, in 1901 changed to "Dioxogen," which it registered as a trade-mark in 1903 and again in 1924. It has spent large sums in advertising the product under that name, and has registered the same mark in more than 30 foreign countries.

The defendant sells the same product under the name "Peroxogen," but without attempting otherwise to invade the plaintiff's good will. Since the suit depends upon registration, no questions of secondary user, or of other unfair competition at common law, arise.

Lanier McKee, of New York City, for appellant.

Bennett I. Schlessel, of New York City, for appellee.

Before MANTON, L. HAND, and SWAN, Circuit Judges.

L. HAND, Circuit Judge, (after stating the facts as above). [1] As to validity, the question is whether the mark was "descriptive," or only "suggestive," of the goods sold. A "descriptive" mark is bad for two reasons: First, because it does not in fact advise the public that the goods come from a "single source" (Coca-Cola v. Koke Co., 254 U. S. 143, 146, 41 S. Ct. 113, 65 L. Ed. 189); second, because, if it did, since the word describes the goods, the protection of the mark would trench upon common speech which should do the same (Standard Paint Co. v. Trinidad Asphalt Co., 220 U. S. 446, 31 S. Ct. 456, 55 L. Ed. 536; Beckwith v. Commissioner of Patents, 252 U. S. 538, 544, 40 S. Ct. 414, 64 L. Ed. 705; Warner & Co. v. Lilly & Co., 265 U. S. 526, 528, 44 S. Ct. 615, 68 L. Ed. 1161). A "suggestive" mark, which avoids both these defects, may still substantially describe the goods (Keasbey v. Brooklyn Chemical Works, 142 N. Y. 467, 37 N. E. 476, 40 Am. St. Rep. 623; Feil v. American Serum Co. [C. C. A. 8] 16 F.[2d] 88; Pennsylvania Salt Co. v. Myers [C. C.] 79 F. 87), for there is no positive policy that forbids the combination. The mark may be so far from colloquial language as not to be confused with any descriptive phrase, and yet convey the same meaning. This distinction section 5 of the statute (15 USCA § 85) means to preserve.

[2] In the case at bar, the misspelling of oxygen, if once observed, would indeed betray the fabrication of the word and show that it was being used as a trade-mark. It is, however, generally held that mere misspelling is not enough. Standard Paint Co. v. Trinidad Asphalt Co., 220 U. S. 446, 455, 31 S. Ct. 456, 55 L. Ed. 536; Thermogene Co., Ltd., v. Thermozine Co., Inc., 234 F. 69 (C. C. A. 2); Krank v. Pabst, 277 F. 15, 18 (C. C. A. 5); American Druggist Syndicate v. U. S. Industrial Alcohol Co., 55 App. D. C. 140, 2 F. (2d) 942; Parmele Pharmacal Co. v. Weiner, 5 F.(2d) 751 (C. C. A. 2). Whether this is because the public is not assumed to be critical enough to detect the contrivance, or whether the mark could have no scope, the books do not say. The difficulty is double; a reader who knew how to spell might be in doubt whether the mistake was deliberate; one who did not, would be unaware that it was a mistake at all. We need not say that the perversion might not be so obvious as to stamp upon the mark its artificial origin and show its purpose (Feil v. American Serum Co., 16 F.[2d] 88 [C. C. A. 8]), for in such matters it is especially unsafe to be absolute. It does seem to us, however, that the misspell-

ing of a single letter is too little, for, while to many it might be enough, over many it would pass unnoticed. We cannot, therefore, treat the mark at bar as entitled to more protection than "Dioxygen."

[3] While that is indeed not itself an English word at all, its composition is apparent. "Di" is not an unknown prefix—e. g., "diphthong," "dilemma," "dichotomy," and "diptych"—and in scientific and technical terminology it is common. Its significance as a prefix to oxygen would be plain to a literate person; the word would mean "double oxygen." True, it would still remain ambiguous; but then too, so would "dioxide," standing alone, a word of common speech. It is not enough that the meaning should not be clear; it must indicate the source of the product, and this "dioxygen" certainly would not do. Even to the unlettered, oxygen must by now have come at least vaguely to mean some sort of substance; it is too common to be altogether unknown. The prefix might indeed be meaningless, yet it would indicate some new sort of oxygen. Again, this will not serve, unless in addition it gives an intimation of source, which it would do as little as to more sophisticated persons.

[4-6] Therefore it seems to us that the mark fails in the first requirement. It fails also in the second. "Dioxide" would infringe as much as "peroxygen"—more indeed—and yet it is the only proper word to describe the class of compounds among which the plaintiff's product is. Certainly the defendant could have used it. Indeed, "double oxygen" itself would be an equal infringement. Both these are actual words. In a suit for unfair trade perhaps the plaintiff could forbid such words as "peroxygen" or "bioxygen," for these are coined, and it is no hardship to prevent their use. But a trade-mark, simpliciter, must be good against all infringements, or against none, else the question of its registry could not be decided in vacuo, as it must be. If a true description in English speech is an infringement, the mark is wholly bad. So it may be questioned whether "Wormix," however sufficient in a suit for unfair trade, was a valid trade-mark. Feil v. American Serum Co., 16 F.(2d) 88 (C. C. A. 8). If so, then "Worm Mixture" could have been forbidden, which would seem to be as near an infringement as "Worm X." In the case at bar it is enough in our judgment on the second point that "dioxide" and "double oxygen" would infringe, and that these describe the class of substances to which the product belongs.

Decree affirmed.