## FEDERAL TRADE COMMISSION v. AMERICAN SNUFF CO. *
### No. 3816.

Circuit Court of Appeals, Third Circuit.
Feb. 13, 1930.
Rehearing Denied March 24, 1930.

*Rehearing denied March 24, 1930.

548

Wm. A. Sweet, James T. Clark, Robert E. Healy, Chief Counsel, and Adrien F. Busick, Asst. Chief Counsel, Federal Trade Commission, all of Washington, D. C., for appellant.

Owen J. Roberts, of Philadelphia, Pa., Edward S. Rogers, of Chicago, Ill., Morton E. Finch, of Memphis, Tenn., and C. Russell Phillips, of Philadelphia, Pa., for appellee.

Before BUFFINGTON and DAVIS, Circuit Judges, and THOMSON, District Judge.

BUFFINGTON, Circuit Judge.

Without entering into a recital of the bulk of testimony involved and the numerous questions discussed, we limit ourselves to matters and things pertinent and decisive.

■ The case involves the construction and enforcement of section 5 of the Federal Trade Commission Act (15 USCA § 45), which provides: "If such person, partnership, or corporation fails or neglects to obey such order of the commission while the same is in effect, the commission may apply to the circuit court of appeals of the United States, within any circuit where the method of competition in question was used or where such person, partnership, or corporation resides or carries on business, for the enforcement of its order. * * * "

As we read the statute, the jurisdiction of this court, and, therefore, its power to enforce, rests on two facts, first whether the respondent has failed or neglected to obey the order of the Commission—a question of fact, and secondly, whether such order is valid—a question of law.

■■ The respondent is using, on packages of snuff made and sold by it, this label

The Commission made an order to cease and desist which, inter alia, provided:

"(3) It is further ordered that the respondent, its officers, agents, representatives, servants and employees, cease and desist from

"(a) Using the word 'Dental' and the depiction of a tooth, or either of them, alone or in connection with any other word or words, in the brand name or on the labels on the containers of any of its snuff products to represent, describe or define such product, when its said product contains no ingredient, other than tobacco.

"(b) Making, publishing or circulating written or oral statements or representations in connection with the sale or distribution of any of its snuff products that such product will cure toothache, pyorrhea, bleeding gums, neuralgia or other like maladies, when such product contains no ingredient other than tobacco."

To this the respondent answered:

"With respect to paragraph Three (a) of the said order, Respondent asserts that the Commission has erred, exceeded its authority and acted beyond its jurisdiction in ordering Respondent to cease and desist from 'using the word "Dental" and the depiction of a tooth, or either of them, alone or in connection with any other word or words, in the brand name or on the labels on the containers of any of its snuff products to

represent, describe or define such product, when its said product contains no ingredient, other than tobacco,' and Respondent respectfully declines to comply with this part of the Commission's order." .

It appearing, therefore, that the respondent has not obeyed the order, it remains for us to decide the question of law whether in view of the proofs, the order is lawful. The jurisdiction of this court to review orders made by the Trade Commission was considered by this court in Curtis Publishing Co. v. Federal Trade Commission, 270 F. 881, 909. We there said that Congress, in enacting that Circuit Courts of Appeal "shall have jurisdiction of the proceeding and of the question determined therein, and shall have power to make and enter upon the pleadings, testimony and proceedings set forth in such transcript, a decree affirming, modifying, or setting aside the order of the Commission" was using language which aptly described the customary jurisdiction and power theretofore exercised by Circuit Courts of Appeal in reviewing cases of alleged unfair business competition.

Considering the case in that light, we note that whatever may have been the possible interest of the public in the matter litigated, it clearly appeared, as the case proceeded, that the case was one between two competitors in the snuff business. From the proofs it will appear that the American Snuff Company, about 1900, by buying Ivey, Owen & Co. and continuing it as a subsidiary, acquired the latter's right to make a brand of snuff known as Dental Snuff, which the latter company had made since 1879, and sold thus labeled. At the time this snuff was originated, and for some time thereafter, it contained some ingredient, other than tobacco, calculated to preserve or be beneficial to the teeth and gums, and was so represented to the purchasing public. The labels on the containers of this snuff contained the word "Dental," together with a depiction of a tooth, and the words "Dental Panacea" and "It possesses a virtue that will preserve the teeth."

After the Spanish-American War, the government placed a tax on proprietary medicines and to avoid such liability on its snuff as a medicine, the respondent ceased to use any other ingredient in its snuff that had any supposed medicinal effect and indeed shortly thereafter stopped using a flavoring extract, which of course had no medicinal property, and at once stopped using its earlier label and thereafter used its pres-

ent one, depicted above, in which it will be noted that instead of the words "Preserve the Teeth" or the statement "It possesses a virtue that will preserve the teeth," there were used the words "Preserves its Flavor." It will also be noted that it contains the statement that it is "made from select leaf and preserves its flavor." It also contains the statement that it is "made of pure tobacco."

Referring to the composition of Scotch snuff, of which the snuff in question is made and is labeled as such, the Commission says it "consists of tobacco leaf and stems finely powdered or ground and is divided into several classes, the most important of which is Strong Scotch snuff, which consists of powdered tobacco leaf and stems with nothing whatever added." It will thus be noted that rsepondent's statement on its label that the snuff is Scotch snuff and that it is "made of pure tobacco" was truthful and was, in effect, an averment that the snuff contained no other ingredient and necessarily that it had no medicinal quality. Such being the uncontroverted facts of the case, the Commission held that "this new label is so like the original label on said brand of snuff in arrangement of lettering and design, in coloration and general appearance, as to cause the one to be mistaken for the other, and to confuse and mislead purchasers familiar with the former product as to the character of the contents of the present containers."

We find no proof in the record which warrants any such finding. We have been referred to no testimony of a purchaser of the old snuff—one who bought prior to 1900—who avers that he or she was misled when they bought the snuff with the new marking upon it, and, as said in Coca-Cola Co. v. Koke Co. of America, 254 U. S. 143, 41 S. Ct. 113, 114, 65 L. Ed. 189, "The plaintiff's position must be judged by the facts as they were when the suit was begun, not by the facts of a different condition and an earlier time." And it is very clear purchasers could not be misled by the present label which differs in several particulars from the old one. The old label stated it was a "Dental Panacea" and averred that "It possesses a virtue that will preserve the teeth." The new label makes no such statement. The old label would seem to have left the impression that there was some element or virtue in its product that had a medicinal effect. The new label makes no such statement. In addition to the above, the back of the present label negatives any possible medicinal qualities. It

states that the snuff is "refined tobacco"; that "it is absolutely pure"; that "it has no artificial flavor"; that it "required no artificial flavoring because it is made of the best tobacco, which is aged for two or three years and then manufactured by a process that preserves the delightful flavor of the tobacco."

We can see no unfairness in the respondent using the word "Dental" and the picture of a tooth on its packages. Snuff users used it in two different ways. One class inhales it through the nostrils, and on that account it is properly styled nasal snuff. The other kind of users is under the word "dipping," described in the dictionary as "the practice of taking snuff by rubbing the teeth or gums with a stick or brush dipped in snuff."

It is quite clear from the literature quoted in the record that in "dipping" snuff simply serves as any other paste or dentifrice, as an abrasive of a desired flavor. Indeed, the derivation of the word, "dens, dentis," a tooth, and "fricure" to rub, friction, shows that the word "dental" as contrasted with "nasal" truly describes the mode of use which the respondent's product answers. In the Journal of the American Dental Association, January, 1928, it is said: "The modern toothbrush may not be perfect, but its present status is a matter of evolution from the 'chew stick.' One end of a wooden twig was beaten to a soft, fibrous condition in those days, and the primitive brush was ready for use."

Moreover, the proofs show that the market for dipping snuff is in the remoter regions of the South. It is described by the writer of "The Carolina Mountains": "Nor is snuff taken after the manner of former generations of snuff-takers. Here the people 'dip,' that is to say, a stick chewed into a brush at one end and kept for the purpose is dipped into the snuff and rubbed over the gums and teeth. It is not a pretty practice, but it seems to afford peculiar satisfaction, enormous quantities of snuff being consumed in this manner. When a mountain woman refers to her 'toothbrush' the snuff-stick is what she means. She says that to dip snuff preserves the teeth and strengthens the constitution."

It will thus be seen that the word "dental" as used in connection with snuff occupies substantially the same relation as the word "nasal" does, and both equally and truthfully represent the particular use to be made of the snuff.

We accordingly hold that the order to cease and desist heretofore granted was unlawful and will be so adjudged.