**BEST FOODS, Inc., et al. v. GENERAL MILLS, Inc.**

Civ. A. No. 321.

District Court, D. Delaware.

May 9, 1944.

See, also, D.C., 3 F.R.D. 275.

George I. Haight (of Haight, Goldstein & Haight), William T. Woodson (of Rogers, Woodson & Rogers), and James M. Best, all of Chicago, Ill., and C. A. Southerland (of Southerland, Berl & Potter), of Wilmington, Del., for plaintiffs.

H. D. Nims (of Nims & Verdi) and Vermont Hatch and J. Adam Murphy (of White & Case) and Percy E. Williamson, Jr., all of New York City, Frank J. Morley, of Minneapolis, Minn., Robert H. Richards, Sr. and Aaron Finger (of Richards, Layton & Finger), of Wilmington, Del., for defendant.

LEAHY, District Judge.

Plaintiffs move under Rule 12(f), Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, to strike that portion of defendant's answer contained in the Fourth to Ninth Defenses, inclusive. A brief statement of the nature of the case and the state of the pleadings will facilitate an understanding of the contentions of the parties.

Plaintiffs commercially manufacture and produce rolled oats under various trade names for human consumption. The complaint charges that defendant, General Mills, Inc., is guilty of actionable unfair competition by making misrepresentations in relation to its product, a ready-to-eat breakfast food, which defendant sells under the name "Cheerioats". Plaintiffs claim

that defendant misrepresents the nature of its product by naming it "Oats", though it is not "oats"; and that defendant misrepresents the qualities of its product, by falsely ascribing to it the nutritive values of "oats" and "oatmeal", though the product does not possess these qualities. In other words, defendant is charged with attempt to trade upon the established businesses of producers of oats and oatmeal by misnaming its product Cheerioats, by misrepresenting that product's nutritive values, and further, by use of catch-words and slogans, with attempt to lead the public to believe that Cheerioats has the qualities of oats and oatmeal.

Defendant's First, Second and Third Defenses are conceded to be relevant defenses. In addition to these three defenses, defendant has added Defenses Four to Nine, and it is to those that the motion to strike is directed. These defenses assert:

Fourth Defense. Plaintiffs have no right or property in the words "oat", "oats", and "oatmeal", as these words are in the public domain and plaintiffs have in fact expressly disclaimed any exclusive right in or to those words; so, plaintiffs have no right in the "good will associated with those words and with the products which they describe."

Fifth Defense. Plaintiffs are estopped to claim unfair competition upon the part of defendant because some of the plaintiffs (as rolled oats manufacturers) solicited defendant to purchase rolled oats or oat flour—and some actually sold rolled oats and oat flour to defendant—with knowledge of the purpose to which defendant would put the purchased goods.

Sixth, Seventh and Eighth Defenses. Plaintiffs are estopped to claim unfair competition on defendant's part because plaintiffs, or some of them, have (a) selected names for several of their other products and (b) advertised those and other products in such a fashion that the names given to those products and the methods of advertising utilized are subject to the same criticism as is directed at defendant's naming of its product "Cheerioats" and defendant's advertising and sales methods relating to its product. In the Seventh Defense, defendant asserts that plaintiffs, or some of them, produce and sell rolled oats prepared for use as a breakfast cereal, but in the sale of said cereal represents that it is a natural whole grain product, though said rolled oats are made by a process by which some of the natural nutritive values of the oat grain are lost.

Ninth Defense. Plaintiffs are not entitled to relief because they come into court with unclean hands, since they have falsely claimed that their products, or some of them, are equal to meat in protein value, and the richest source of Vitamin B, etc.

Plaintiffs argue that these particular defenses, with the exception of the Ninth Defense and that part of the Seventh Defense dealing with rolled oats, should be stricken because they are not confined to such conduct of the plaintiffs as immediately concerns the litigation before the court. In short, they are not confined to conduct dealing with rolled oats. With respect to plaintiffs' conduct called in issue by the Ninth Defense, and for that part of the Seventh Defense dealing with rolled oats products, plaintiffs concede that these matters are germane to the issues. Plaintiffs, nevertheless, contend that such defenses should likewise be stricken because these defenses are intended to raise the defense of "unclan hands" which is not a valid defense in unfair competition causes.

1. The first group of defenses must be stricken under Rule 12(f), Federal Rules of Civil Procedure, on the ground that they are not germane to the subject matter of this suit. Rule 12(f) provides as follows: "Upon motion made by a party before responding to a pleading or, if no responsive pleading is permitted by these rules, upon motion made by a party within 20 days after the service of the pleading upon him or upon the court's own initiative at any time, the court may order any redundant, immaterial, impertinent, or scandalous matter stricken from any pleading." This rule has been interpreted in such a way that any pleading not germane to the issues should be stricken on motion by the adverse party. In Schenley Distillers Corporation v. Renken, D.C., 34 F.Supp. 678, 684, for example, the Court said: "If a special defense states matter which in law constitutes no defense, having reference to the issues in controversy, it is irrelevant, immaterial and not responsive to the issues of the controversy and should be stricken on proper motion." The opinion in the Schenley case contains a definition of "impertinence" as given by the Supreme Court in Harrison v. Perea, 168 U.S. 311, 18 S. Ct. 129, 42 L.Ed. 478, and contains this statement of a leading text-writer (Moore): " 'Impertinence' * * * 'consists of any

allegation not responsive nor relevant to the issues involved in the action.'" This is a sound rule, for otherwise an adverse party would have it in his power to transform one lawsuit into many little unrelated lawsuits [1] and would defeat the purposes of the Rules of Civil Procedure, which provide that "These rules * * * shall be construed to secure the just, speedy, and inexpensive determination of every action." Rule 1, Federal Rules of Civil Procedure.

It is clear that these particular defenses are not germane to the issues before the court. These defenses, in effect, claim that the plaintiffs are estopped because of various actions on their part to claim that defendant is guilty of unfair competition. That this defense, even assuming that there is a true estoppel, is not germane to the issues will become clear by a consideration of a few specific examples. In the Sixth Defense,[2] defendant calls into question the use by one of the plaintiffs of the name "Oaties" or "Quaker Oaties" in connection with the sale of one of its products. Defendant claims that "Quaker Oaties" is not "a food made entirely of whole grain oats by the rolling process, which when cooked is known as 'oatmeal'", wherefore the plaintiffs should be estopped from complaining of defendant's acts with relation to its methods of marketing Cheerioats. If this defense were allowed to stand, the court must try a second and wholly unrelated lawsuit involving such questions as the contents, nature and qualities of "Quaker Oaties", and the propriety of the name "Quaker Oaties"; and this in a lawsuit which, when filed, was designed to determine the fairness of defendant's competition with relation to the exploitation of one of its products.

The obvious objection to these defenses is made more apparent by a consideration of the Seventh Defense in which defendant alleges that there are objections (a) to Quaker's advertising relating to "Puffed Wheat Sparkies", and (b) with relation to "Puffed Rice Sparkies", and (c) to National Oats Company's advertising of "National Oats", and (d) to The Best Foods, Inc.'s advertising relating to "H–O Oats". If this defense is not stricken the court will be trying five unrelated lawsuits in which questions clearly foreign to the primary issues in controversy must be determined.

The Eighth Defense is even more clearly defective. In that defense, defendant states that "Plaintiff The Quaker Oats Company has produced and sold a ready-to-eat breakfast cereal under the name 'Quaker Wheat Crackels', sometimes called 'Quaker Crackels', and in its sale has represented that it is made 'by blending together the choicest energy parts of Nature's finest grain foods' and so gives 'the wonderful nourishment of these different grains combined into one supreme cereal'. On information and belief, the product sold by said plaintiff under such name is a multiple in-

---

[1] The rule has been applied in analogous fields. For example, in General Excavator Co. v. Keystone Driller Co., 6 Cir., 62 F.2d 48, evidence of "unclean hands" respecting the patent involved in the litigation was recognized as germane. But, in Van Kannel Revolving Door Co. v. General Bronze Corporation, D.C., 6 F.Supp. 518, evidence relating to patents not in suit was considered not germane. In Jergens Co. v. Bonded Products Corp., 2 Cir., 21 F.2d 419, evidence of "unclean hands" as to shaving cream and cold cream products was held not germane in an action relating to "Woodbury's facial soap."

[2] The Fourth Defense alleges affirmatively that the words "oats" and "oatmeal" are in the public domain. However, plaintiffs do not claim an exclusive right to the use of these words. Plaintiffs seek freedom from unfair competition. They assert no right of monopoly. Plaintiffs claim to be free from defendant's misuse of "oats" and "oatmeal" upon the theory that if their competitors use the words they must do so truthfully, and not attempt to trade upon the reputation of plaintiffs' products. In any event, it would appear that the Fourth Defense is substantially repetitious of the averments contained in the First and Second Defenses.

The substance of the Fifth Defense is that some of plaintiffs solicited defendant to purchase their products, knowing that defendant would use them in making Cheerioats. Thus, defendant claims plaintiffs should be estopped. There is no real estoppel here. Defendant's purchases gave no right to misname its product "Cheerioats"—if at trial plaintiffs can successfully prove such a misnomer exists—nor does the mere fact of such purchases constitute a consent in advance by plaintiffs for defendant to mislead by advertising or to acquire "a free ride" on the efforts of plaintiffs and other rolled oats manufacturers. At most, the estoppel defense is based on the concept of "You made me do it; I didn't want to do it."

gredient ready-to-eat food and is not made wholly of wheat, but contains also oat flour." That this defense is not germane to the issues is obvious. "On information and belief" the defendant avers that "Crackels" is a "multiple ingredient" product "and is not made wholly of wheat". Of course, that is true; and plaintiffs' advertising so states. Moreover, this defense states: "Plaintiff The Quaker Oats Company has produced and sold [Crackels]." It will be observed that no time is specified in connection with these acts of the plaintiff The Quaker Oats Company. If this defense is not stricken, is the court to consider the entire business history of all the plaintiffs?

These defenses must be stricken as not being germane to the issues before the court.

2. Sufficiency of "unclean hands" as a defense to this action. As stated, plaintiffs conceded at the argument that the Ninth Defense and part of the Seventh Defense are germane to the issues before the court. The question, then, with respect to these defenses is whether the defense of "unclean hands" is sufficient in law to require a dismissal of the action, for if the defense is legally insufficient it must be stricken. Schenley Distillers Corporation v. Renken, supra. The maxim that "He who comes into a court of equity must come with 'clean hands'" is as old as equity itself. In the early cases of unfair competition if it was proved that plaintiff himself was guilty of a misrepresentation in connection with the trading of his goods, the complaint was dismissed because of plaintiff's unclean hands, regardless of whether defendant was blandly guilty of unfair competition. In the leading "Syrup of Figs" case[3] the plaintiff there spent over a million dollars to advertise a medicine under that name, employing a distinctive get-up. The defendant started to manufacture the same product under the same name, closely imitating the plaintiff's product. In reply to the charge of unfair competition, the defense was raised that plaintiff's trade-mark was misleading since the medicine had neither at that time nor at any previous time actually contained syrup of figs. It was clear from the evidence that when the plaintiff first sold his medicine to the public in special bottles labeled "Syrup of Figs", it had actually contained certain fruit essences, among them figs. But these fruit ingredients were later eliminated although the name of the article remained unchanged. The evidence showed the preparation was quite effective, soon became very popular, and that the manufacturer was never aware he was deceiving the public by continuing to use that name. Since the plaintiff was guilty of misrepresentation, the court refused to enjoin the defendant. But, there has been a departure from the doctrine of the "Syrup of Figs" case. The courts now seem more concerned with whether, in the case of a particularly well-known product, the public has become accustomed to associating a product with a definite taste, appearance, smell, or effect, without in the least being deceived by a product which does not contain exactly what it professes to contain, but which is the identical article which had previously satisfied them. Derenberg, Trade-Mark Protection and Unfair Trading, p. 663. The current theory is accepted in two cases decided subsequent to the Syrup of Figs case.[4] In Coca Cola Co. v. Koke Co., 254 U.S. 143, 41 S.Ct. 113, 114,

---

[3] Worden & Co. v. California Fig Syrup Co., 187 U.S. 516, 23 S.Ct. 161, 47 L.Ed. 282.

[4] In the early development of the law of unfair competition, "unclean hands" was applied with classical strictness. The Leather Cloth Co., Ltd. v. The American Leather Cloth Co., Ltd., 11 H.L.C. 523; Manhattan Medicine Co. v. Wo< 108 U.S. 218, 2 S.Ct. 436, 27 L. Ed. 706; Edward Thompson Co. v. American Law Book Co., 2 Cir., 122 F. 922, 62 L.R.A. 607; Fetridge v. Wells, 4 Abb. Prac., N.Y., 144. But the underlying danger to the public in applying the doctrine was recognized in Hilson Co. v. Foster, C.C., 80 F. 896, 901, where the court said: "The rule of law applicable to such circumstances is perfectly clear. Equity will refuse to aid a complainant, in cases of this character, who is himself guilty of making material false statements in connection with the property he seeks to protect. [Manhattan] Medicine Co. v. Wood, 108 U.S. 218, 2 S.Ct. 436 [27 L.Ed. 706]; [Solis] Cigar Co. v. Pozo, 16 Colo. 388, 26 P. 556, [25 Am.St.Rep. 279]; Fetridge v. Wells, 4 Abb.Prac. [N.Y.], 144; Krauss v. [Jos. R.] Peebles' Sons, [C.C.], 58 F. 585; Seabury v. Grosvenor, Fed.Cas. No. 12,576, 14 Blatchf. 262; Prince Manuf'g Co. v. Prince's Metallic Paint Co., 135 N.Y. 24, 31 N.E. 990, [17 L. R.A. 129]; Connell v. Reed, 128 Mass. 477, [35 Am.Rep. 397]. It would seem

65 L.Ed. 189, the defendant raised the defense that the name of the well-known drink "Coca Cola" falsely indicated a percentage of cocaine. By this, it is alleged, the public would be deceived. Holding the defense inapplicable, Mr. Justice Holmes said: "The argument does not satisfy us. We are dealing here with a popular drink not with a medicine, and although what has been said might suggest that its attraction lay in producing the expectation of a toxic effect the facts point to a different conclusion. * * * The name now characterizes a beverage to be had at almost any soda fountain. It means a single thing coming from a single source, and well known to the community. It hardly would be too much to say that the drink characterizes the name as much as the name the drink. In other words 'Coca Cola' probably means to most persons the plaintiff's familiar product to be had everywhere rather than a compound of particular substances." In the L'Origan case,[5] the defendant stated in defense that the famous Coty perfume "L'Origan" did not, in fact, contain the oil of the flower "origan". The defendant, on the other hand, claimed his perfume contained the genuine "origan" oil, and that he, therefore, was entitled to manufacture and sell his "origan" perfume. The court held, however, that no person buying Coty's perfume would ever feel deceived because the "origan" flower was not an ingredient of it. The plaintiff's product was so well known that it had acquired a secondary meaning which would be protected against unfair competition on the part of the defendant. These later cases do not, of course, completely reject the defense of "unclean hands". They merely refuse its application in cases where the plaintiff's product has acquired a "secondary meaning". In both of the cases discussed the court was protecting a trademark or name, but it would seem that the same protection should be afforded against all methods of unfair competition.

In the recent "Raisin Bran" case,[6] the court admitted the "unclean hands" defense but found from the evidence that the defense had not been established. This case could be interpreted to mean that the plaintiff's product had not acquired a secondary meaning, or that the court preferred to follow the earlier Supreme Court

that this rule might be modified so as to permit the court, for the protection of the general public, to enjoin both parties, but so long as it remains the rule of the supreme court it is the duty of inferior tribunals to follow it." Nims, Unfair Competition and Trade-Mark (3d Ed.) p. 33, in pointing out that the courts should act for the protection of the consuming public as well as of the plaintiff, says, "There is yet much progress to be made, for we still apply the doctrine of laches and unclean hands in these cases. To continue a status in which great numbers of the public are hoodwinked into accepting goods they do not ask for or want, merely because the plaintiff has been lazy about defending his trade-mark or himself has been guilty of fraud is to admit a most discouraging lack of capacity in the court for administering practical justice." And Derenberg, Trade-Mark Protection and Unfair Trading, pp. 662, 663, after crediting Nims as the first to clearly recognize the underlying danger to the public in these cases, takes the position that in some cases both parties should be enjoined. "In case of gross misrepresentation, it would appear to be sounder policy for the courts to enjoin both parties from continuing their unfair practices; in a case like that of 'Syrup of Figs', it would have been ade-quate to enjoin the defendant from any further use or imitation of plaintiff's mark or get-up and at the same time to have required the plaintiff to clearly make known the real ingredients of his product." To date courts have not, however, adopted the expedient of enjoining both parties—this result is partly due, no doubt, to our adversary system of litigation. Where plaintiff's product has acquired secondary meaning, it does not seem that, in the absence of gross misrepresentation, he should likewise be enjoined in any event. Coca Cola Company v. Koke Co., 254 U.S. 143, 41 S.Ct. 113, 65 L.Ed. 189. Quaere: in the unusual situation where both the plaintiff and defendant's products have acquired secondary meaning, should either party be enjoined? The case for the consuming public in some instances is not a strong one, especially where the administrative agency has concluded not to enforce applicable statutes, Federal Food, Drug, and Cosmetic Act of 1938, 21 U.S.C.A. § 301 et seq., and the Federal Trade Commission Act, 15 U.S.C.A. § 41 et seq., for the protection of the public.

[5] Le Blume Import Co. v. Coty, 2 Cir., 293 F. 344.

[6] Skinner Manufacturing Co. v. General Food Sales Company, Inc., D.C., 52 F.Supp. 432.

cases (such as the Syrup of Figs case, 187 U.S. 516, 23 S.Ct. 161, 47 L.Ed. 282) rather than the later cases (such as the Coca Cola case, 254 U.S. 143, 41 S.Ct. 113, 65 L. Ed. 189). But, however it be interpreted, I am of the opinion that the doctrine illustrated by the Coca Cola case is sound and I prefer to follow it in this matter. I shall not, however, order the relevant portion of the Seventh or the Ninth Defense stricken, for the plaintiffs will have to show by evidence that their products have acquired "secondary meaning". I cannot take judicial notice of such matters; but, as suggested, if plaintiffs show secondary meaning at trial, I shall then rule that defendant may not adduce evidence supporting the defense of "unclean hands".