42 C.C.P.A.(Patents)

PRICE CANDY CO., Appellant,

v.

GOLD MEDAL CANDY CORP.,
Appellee.

Patent Appeal No. 6086.

United States Court of Customs
and Patent Appeals.

March 22, 1955.

Rehearing Denied April 28, 1955.

James Atkins, Washington, D. C. (Russell L. Law, Washington, D. C., of counsel), for appellant.

Watson, Leavenworth, Kelton & Taggart, and David A. Woodcock, New York City, for appellee.

Before GARRETT, Chief Judge, and O'CONNELL, JOHNSON, WORLEY, and COLE, Associate Judges.

JOHNSON, Judge.

This is an appeal from the decision of the Commissioner of Patents, speaking through the Examiner-in-Chief, 98 U.S.P.Q. 232, affirming the decision of

the Examiner of Trade-Mark Interferences sustaining appellee's opposition to registration of the mark sought by appellant.

On March 9, 1949, appellant, Price Candy Company, filed an application, Serial No. 575,159, in the Patent Office for registration, under the Trade-Mark Act of 1946, 15 U.S.C.A. § 1051 et seq., of the mark "Turks" for use upon candy. The date of first use of the mark in commerce among the several states was alleged in the application as January 17, 1949. The application was examined and passed for publication pursuant to section 12(a) of the Trade-Mark Act of 1946, and the mark was duly published in the Official Gazette on February 6, 1951. On March 7, 1951, appellee filed its notice of opposition to said registration.

In its notice of opposition, appellee alleged that it is the owner of trademark No. 419,561, registered in the United States Patent Office on February 19, 1946, for candy, which includes as prominent features the word "Turkish" and representations of figures in Turkish costume; that it has used its trade-mark since a date long prior to January 17, 1949, which is the date claimed by applicant; that it is still using the trade-mark on wrappers in which its candy is sold; and that the trade-mark which applicant seeks to register so resembles the marks used by opposer as to be likely, when applied to candy, to cause confusion and mistake and to deceive purchasers.

A stipulation under Rule 25 of this court, 35 U.S.C.A.Appendix, was filed by the attorneys representing both parties. It appears from the stipulation that opposer's labels and registration bore the words "Turkish Taffy" or "Turkish Chewing Taffy," and above these words there appeared in the earliest label the word "Schwarz's," and in subsequent labels the word "Bonomo's." Furthermore, opposer's labels and trademark registration at all times bore pictures which included four figures of people each wearing a red Turkish fez, red Turkish trousers, and Turkish slippers. It was set forth in the stipulation that opposer promoted sales by using persons dressed in Turkish costumes to distribute its coupons for candy. It was further stated in the stipulation that opposer sells its candy both as low priced candy bars and as pound and half-pound packages. It also is shown in the stipulation that opposer sold 7,000,000 bars under its label in 1948 and that this figure increased to 39,000,000 bars in 1951.

As stated above, appellant's mark which is sought to be registered is "Turks." Appellee's mark which is used to oppose registration, in addition to having the aforementioned characteristics, may be best additionally described by quoting directly from the decision of the Examiner-in-Chief as follows:

"* * * Opposer's registration is a composite mark consisting of the name 'Bonomo's [sic] in script with the words "TURKISH CHEWING TAFFY', all in a vertical column. At the left of the words is shown a relatively large kettle with a fire thereunder, and two small figures in Turkish garb pouring and mixing ingredients into the kettle. At the right of the words, two additional figures in Turkish garb are pictured as pulling taffy. * * *"

The reasoning of the Examiner-in-Chief in affirming the decision of the Examiner of Trade-Mark Interferences is as follows: The words in opposer's registration are supplemented by characters dressed in Turkish clothes, and thus render the word "Turkish" the dominant part of opposer's registration. It was further stated that since the words "Turks" and "Turkish" are substantially identical in meaning, appearance, and sound, that the use of the word "Bonomo's" by opposer is not sufficient to avoid the likelihood of confusion with an otherwise confusingly similar mark. Celanese Corporation of America. v. E. I. DuPont De Nemours & Company, 154 F.2d 143, 33 C.C.P.A., Patents, 857, was cited in this respect.

The basic issue in this case is whether the registration of the trade-mark "Turks" would cause likelihood of confusion, mistake, or deception of purchasers when applied to appellant's goods, namely candy, in view of the fact that appellee-opposer has used the above described registration, namely, "Bonomo's Turkish Taffy" with the accompanying picture, on candy.

As stated above, the Examiner-in-Chief was of the opinion that the word "Turkish" in combination with the picture of Turks rendered the word "Turkish" the dominant portion of opposer's mark, and that the word sought to be registered, "Turks," was confusingly similar to this dominant portion. We do not feel that the word "Turkish" is the dominant portion of opposer's trade-mark. One criterion for determining the dominant portion of a trade-mark is set forth in the Celanese case, supra. This criterion is that if a purchaser would be more likely to remember and use one part of a mark as indicating *origin* of goods, this is the *dominant* part of the mark. Therefore, applying this criterion to the present case, it is our opinion that a purchaser would not be more likely to remember and use the word "Turkish" by itself, more than another word of opposer's mark, as indicating the origin of opposer's candy. This seems to be borne out by the testimony of a witness for opposer which was set forth in the stipulated facts wherein it is stated that opposer's candy is generally ordered as "Turkish Taffy," and in a minority of the cases as "Bonomo's Turkish Taffy." In our opinion it is inconceivable that the origin of opposer's candy could ever be determined solely by the word "Turkish" without the use of other of the qualifying words which appear on the trade-mark. Yet it is inherent in the Examiner-in-Chief's reasoning that the word "Turkish" is the outstanding feature of opposer's mark and is what one purchasing opposer's candy is most likely to remember about the origin of opposer's candy. We feel that the word "Turkish" is not the dominant portion of opposer's mark in the sense that, by itself, it could identify the origin of opposer's candy.

Since we have come to the conclusion that the word "Turkish" is not the dominant portion of opposer's mark, we feel that the holding of the Celanese case, supra, cited by the Examiner-in-Chief, is inapposite. In the Celanese case the mark sought to be registered was "DuPont Clar-apel." Our court found that the word "Clar-apel" and the trade-mark used as an opposition, "Clari-foil," were confusingly similar, and that the addition of the surname DuPont to one of two otherwise confusingly similar marks is not of itself sufficient to avoid the likelihood of confusion. In the present case that situation does not exist. Thus disregarding the surname "Bonomo's" in opposer's mark, as the Examiner-in-Chief has done, there still remain the words "Turkish Taffy" plus the picture of the Turks in opposer's mark as compared with the sole word "Turks" in appellant's mark. It seems to us that, when these parts of the respective marks are compared, there is no confusing similarity since they do not look alike or sound alike. Thus, as we see it, the Celanese case, supra, is inapposite since it should be applied to discount the distinguishing value of a surname only after the other parts of the marks have been found to be confusingly similar.

In determining the question of confusing similarity of trade-marks, similarities and dissimilarities therein should both be considered. Younghusband v. Kurlash Co., 94 F.2d 230, 25 C.C.P.A., Patents, 886. In the present case the similarities are that opposer's mark, "Bonomo's Turkish Taffy," contains the word "Turkish" and has a drawing which shows people dressed in Turkish costume, these people being referred to by appellee in the brief as "Turks," while appellant's mark consists in its entirety of the word "Turks." The dissimilarities are that appellee's mark contains the words "Bonomo's" and "Taffy" in addition to the word "Turkish" while appellant's mark contains nothing in ad-

dition to the aforementioned word "Turks." Keeping these similarities and dissimilarities in mind, we must therefore analyze the two marks in the light of accepted rules of trade-mark construction to determine whether there is confusing similarity.

■ Marks of the parties must be considered in their entireties. Valpo Co. v. Solis, Entrialgo y Compania, 175 F.2d 457, 36 C.C.P.A., Patents, 1160. But different features may be analyzed to determine whether the marks involved are confusingly similar. Hoffman-La Roche, Inc., v. Kawerk, 148 F.2d 557, 32 C.C.P.A., Patents, 954. The common portions of the marks must be considered and cannot be disregarded. Schering & Glatz v. Sharp & Dohme, 146 F.2d 1019, 32 C.C.P.A., Patents, 827.

■ In analyzing the two marks in the light of the above cited rules of trade-mark construction, we find, when the two marks are viewed in their entireties, that "Turks" and "Bonomo's Turkish Taffy" do not look alike or sound alike, and on this basis we do not find them to be confusingly similar. Even if the common portions of the marks, "Turks," and "Turkish," are considered, we do not feel that the word "Turkish" in opposer's mark is dominant so as to render the word "Turks" confusingly similar to opposer's entire mark. Furthermore, when the different features of both marks are analyzed we feel that the words "Taffy" and "Bonomo's" sufficiently differentiate the word "Turkish" in opposer's mark from the word "Turks" taken alone so that the marks are not confusingly similar.

For the foregoing reasons, we must therefore reverse the decision of the Examiner-in-Chief.

Reversed.

O'CONNELL, Judge (dissenting).

The concurrent decisions rendered by the office of the Commissioner of Patents sustaining Gold Medal's opposition to appellee's registration of the word "Turks" should be affirmed for the reasons stated in the decision of the Examiner-in-Chief, 98 U.S.P.Q. 232.

Appellant has successfully relied upon certain weaknesses in appellee's mark which should not have been considered here. There is no escape from the acknowledged fact that appellee's mark and labels predominantly and pictorially emphasize a group of "Turks" illustrated in Turkish costume. Upward of 50 million bars of appellee's goods bearing such mark and label have been placed into the hands of customers, mostly children. Accordingly "Turks" is the concept most likely to be remembered as a lasting impression in the mind of the purchasing public with respect to the candy bars in issue.

Thus, in Coca-Cola Co. v. Koke Co., 254 U.S. 143, 145, 41 S.Ct. 113, 65 L.Ed. 189, the Supreme Court enjoined the defendant from appropriation of the word "Koke" by a newcomer because the public had often bought the plaintiff's soft drink by the abbreviated name or nickname of "Koke" or "Coke," even though the trade-mark on plaintiff's label was "Coca-Cola." Justice Holmes pointed out that any weakness in Coca-Cola's mark was no ground upon which its appropriation in abbreviated form by a newcomer may be justified to the detriment not only of the original trade-mark owner but also the public interest. That owner, under such circumstances, is entitled to relief not only by way of injunction but also damages for infringement. Coca-Cola Co. v. Koke Co., supra; Mishawaka Rubber & Woolen Mfg. Co. v. S. S. Kresge Co., 316 U.S. 203, 62 S.Ct. 1022, 86 L.Ed. 1381; John Morrell & Co. v. Doyle, 7 Cir., 97 F.2d 232.

On the same basis this court recently held that the applicant's mark "Palm Wave," enhanced by the illustration of the ocean waves therebelow, was confusingly similar to "Ocean Wave," owned and in use by another on identical goods. In re Goodall-Sanford, Inc., 195 F.2d 542, 39 C.C.P.A., Patents, 908.

I am authorized to state that GARRETT, Chief Judge, concurs in this dissent.