FARMERS' EDUCATIONAL AND CO-
OPERATIVE UNION OF AMERICA,
a corporation, Plaintiff,

v.

FARMERS EDUCATIONAL AND CO-
OPERATIVE UNION OF AMERICA,
IOWA DIVISION, and Service Associa-
tion, a corporation, Farmers Education-
al and Cooperative Union of America,
Iowa Division, an unincorporated asso-
ciation, Iowa Union Farmer Associa-
tion, an unincorporated association,
Fred W. Stover, Chas. Shearn, George
Wharam, Lee Harthan, Betty Lownes,
Elmer Gustafson, Le Roy Martin, Annis
Thorson, Paul Roth, Dean Huff, Emil
Ronfeldt, Lester Muhlenbruch, and Gus-
tav Mohr, Defendants.

No. 2–582.

United States District Court
S. D. Iowa, Central Division.
May 26, 1956.

Frederic M. Miller, of Brody, Parker, Miller, Roberts & Thoma, Des Moines, Iowa. Charles F. Brannan, Denver, Colo., for plaintiff.

Cosson & Cosson, Des Moines, Iowa, for defendants.

HARPER, District Judge.

This action was brought by Farmers' Educational and Cooperative Union of America, a Texas corporation, against Farmers Educational and Cooperative Union of America, Iowa Division, and Service Association, a corporation, and others, to enjoin the defendants from an alleged infringement of three of plaintiff's trade marks, all of which are registered on the Principal Register of the United States Patent Office. The trade marks are, (1) a symbol and service mark, consisting of a plow, rake and hoe, surrounded by a circle, (2) a collective mark for goods, consisting of the words, "Union Farmer", used for newspapers published by plaintiff and its divisional organizations, and (3) a service mark, consisting of the words "Farmers Union", used by plaintiff in the sale and advertisement of services.

It was stipulated that the Farmers Educational and Cooperative Union of America, Iowa Division, and Service Association, a corporation, is no longer in existence and was not in existence at the time of the commencement of this action, was not served and is not a party to these proceedings. The defendants,

Farmers Educational and Cooperative Union of America, Iowa Division, and the Iowa Union Farmers Association, are both Iowa corporations.

Jurisdiction is conferred upon this court by the Lanham Act, under which the suit is brought.

The defendants conceded at the trial that plaintiff is entitled to the exclusive use of its symbol and service mark, consisting of the plow, the rake and hoe, surrounded by a circle, and indicated that they were not using said symbol and will not use it in the future, but admit that they are using the other marks, namely, "Union Farmer", and "Farmers Union", and indicated an intention to continue to use said marks unless restrained from so doing.

The evidence disclosed without question that the use by the defendants of said two marks is in direct competition with the plaintiff. The testimony discloses that the plaintiff, a Texas corporation, authorized to do business in Iowa, has been operating on a national scale since 1906. Its purpose, according to its articles of incorporation, is "to protect its members engaged in the various branches of the farming industries, in their various pursuits, which in promoting and safeguarding their said interests, is partially educational, fraternal, benevolent and cooperative."

In furtherance of these purposes plaintiff publishes and distributes in the various states of the union a number of pamphlets and a Washington Newsletter. Examples of these pamphlets were placed in evidence and each displayed plaintiff's service mark, "Farmers Union", and most of them displayed in conjunction therewith plaintiff's symbol, the plow, rake and hoe, surrounded by a circle. The plaintiff also publishes a monthly newspaper, under the name of the National Farmers Union. In its distribution among the several states plaintiff identifies and advertises said newspaper with the products mark, "Union Farmers", and the service mark, the aforementioned symbol.

In 18 of the 29 states in which plaintiff has members, it has set up state organizations, many of which publish newspapers that use plaintiff's products mark, "Union Farmer". The defendant, Farmers Educational and Cooperative Union of America, Iowa Division, was originally an unincorporated association located in Iowa, which in December, 1924, became a corporation pursuant to the laws of Iowa. On October 8, 1917, this defendant was issued a charter, whereby it became an integral part of the plaintiff in the State of Iowa, continuing to be such until 1954. In March of 1954, plaintiff revoked the charter of its Iowa division, the legality of which revocation was conceded at the trial by the defendant.

On September 24, 1955, subsequent to the filing of the complaint, this defendant, by amendment to its articles of incorporation, changed its name to Iowa Farmers Union. The evidence shows that this new name is identical with the names by which plaintiff's state organizations are commonly, or colloquially, known, and hence, is almost identical with the name by which said corporation was commonly, or colloquially, known before the Iowa charter was revoked by plaintiff in 1954.

The defendant, Iowa Union Farmers Association, publishes a newspaper under the name of "Iowa Union Farmer", whose mark resembles those of plaintiff's state organization newspapers. Prior to the revocation of the charter of the defendant corporation by plaintiff, such publication was authorized by the then legally constituted Iowa Farmers Union and it continues to be so authorized by said organization.

The plaintiff contends that when the Iowa charter was revoked in 1954, the Iowa Farmers Union's right to use the mark "Union Farmer" on its newspaper was also revoked. The defendants contend that the court is without jurisdiction, despite the fact that the suit is brought under the Lanham Act, 15 U.S. C.A. § 1051 et seq., and the further fact that there is diversity of citizenship, con-

tending with respect to the Lanham Act that the plaintiff has failed to show that the alleged infringement was "in commerce."

The courts have repeatedly held that the defendant's infringement is interstate if its local activities adversely affect plaintiff's interstate activity. Bulova Watch Co. v. Steele, 5 Cir., 194 F.2d 567, Pure Foods v. Minute Maid Corp., 5 Cir., 214 F.2d 792, and National Tuberculosis Ass'n v. Summit County Tuberculosis & Health Ass'n, D.C., 122 F.Supp. 654.

The testimony conclusively discloses that defendants' activities in Iowa have affected plaintiff's activities there and also that defendants' activities have received some national publicity. In the words of the court in the National Tuberculosis case, supra, loc.cit. 657, "The activities of these defendants multiplied in other places would seriously threaten plaintiff's national organization and its nationwide * * * program." The defendants' contention that the court is without jurisdiction has no merit.

The facts further show that the plaintiff's service mark, the symbol, with the plow, the rake and the hoe, surrounded by the circle, was registered in the Principal Register of the Patent Office on November 4, 1952; plaintiff's collective service mark for goods, "Union Farmer", usually used for newspapers published by plaintiff and its divisional organizations, was registered in the Principal Register of the Patent Office on November 2, 1954; and plaintiff's service mark, "Farmers Union", was registered in the Principal Register of the Patent Office on April 1, 1952.

Registration, according to 15 U. S.C.A. § 1057(b), is prima facie evidence of the validity of the registration and of the registrant's exclusive right to use the mark on the goods and services specified.

In the case of Curtis-Stephens-Embry Co. v. Pro-Tek-Toe Skate Stop Co., 199 F.2d 407, loc.cit. 413, the 8th Circuit Court of Appeals said:

"Therefore, when a mark is registered upon the principal register under the Act of 1946, the presumption arises that the statutory prerequisites to its valid registration have been met, i.e. (1) its dissimilarity to other registered marks for similar goods, (2) its secondary meaning, (3) its 'ownership' by the applicant, and (4) the applicant's exclusive right to use the trade-mark in commerce in connection with the goods specified."

Since in this case the marks are registered, the defendants have the burden of proving that the marks are invalidly registered. In order to prove the invalidity of plaintiff's mark, the defendants have attempted to show that the Patent Office in granting the registrations had been incorrect in finding that the descriptive words, "Farmers" and "Union" had acquired secondary meaning and hence qualified—as required by Section 1052—as distinctive. Defendants' proof in this regard is, first, an examination of the words themselves, and secondly, evidence that over a hundred Iowa corporations have for some time used the words, "Farmers" and "Union" in combination, and that some twenty corporations still in existence use the same words. Two of the examples in evidence are: "Farmers Union Cooperative Company of Marquoketa, Iowa", and "Farmers Union Exchange of Dennison, Iowa."

The first defense is patently valueless. The second fails because, unlike the defendants, the other users— some of whom are licensees of the National Farmers Union—dispense goods and services different from plaintiff, and hence are not in competition with plaintiff. Section 1115(a), Title 15; Time, Inc. v. T. I. M. E., Inc., D.C., 123 F.Supp. 446. While the presumption created by the statute is a rebuttable one, and the respect usually given the informed judgment of the Patent Office is not mandatory and its judgment not conclusive, yet there was no evidence of any real substance to the contrary.

The defendants further contend that plaintiff's mark, if validly registered at all, is at the most a "weak" mark, and, therefore, entitled to only limited protection. The doctrine of a hierarchy of mark exists, but is not applicable to the case at bar. This doctrine holds that the strong mark (the coined or arbitrarily applied word) should have the usual protection against imitation by all classes of goods and services, whereas the weak mark (suggestive, for example, of the nature of the product), should be protected against use of its mark only on closely related goods. Thus, the registered mark, "Sunbeam", for electrical appliances has been barred from use on lamps but not on furniture. Sunbeam Furniture Corp. v. Sunbeam Corp., 9 Cir., 191 F.2d 141. See also, Time, Inc., supra. In this case the type of services offered by the two organizations is quite similar and the likelihood of confusion would be great.

Finally, the defendants contend that plaintiff has unclean hands, which precludes it from recovering in the present case. From the testimony, exactly what the acts are which are supposed to constitute unclean hands is not clear. They would seem to be, however, the plaintiff's actions in revoking the charter of the Iowa division because the Iowa division didn't see eye to eye with the national organization on political matters. This being so, it would seem that said actions have no intrinsic connection with the subject matter of the litigation, said actions having to do with inter-organizational strife, whereas the subject matter of the litigation is trade mark infringement.

The defense of unclean hands is reluctantly applied by the courts and is always scrutinized with a very critical eye. Coca Cola v. Koke Co., 254 U.S. 143, 41 S.Ct. 113, 65 L.Ed. 189. The half-hearted defense of the defendants in this case with respect to unclean hands is without merit.

For the foregoing reasons the defendants should be enjoined from the use of plaintiff's service mark, "Farmers Union", plaintiff's service mark, the aforementioned symbol, and the plaintiff's collective mark, "Union Farmer".

The attorneys for the plaintiff will prepare the Findings of Fact, Conclusions of Law and Judgment to be entered, and submit same to the court for entry.