## CONTOGEORGE v. SPYROU et al.

Civ. 35/4.

District Court, S. D. New York.

May 2, 1946.

Philip Adler, of New York City, for plaintiff.

Conforti, Seward, Lane & Kourides, of New York City (Charles H. Tuttle, and Gerald J. Craugh, both of New York City, of counsel), for defendants.

CAFFEY, District Judge.

In oral arguments and in briefs a good deal has been said about the parol evidence rule. For the purpose of passing on the pending motion, however, I shall not now take up any purely evidence question. On the contrary, I shall confine my discussion to the bases for the motion to strike pursuant to rule 12(f) of the Federal Rules of Civil Procedure, 28 U.S.C. A. following section 723c.

There are four grounds for the motion. These are that the matter objected to is either (1) redundant, or (2) immaterial, or (3) impertinent, or (4) scandalous. Parol evidence rules grew up as part of the common law system; whereas, the civil procedure rules originated pursuant to a statute which authorized their adoption. In specific words rule 12(f) definitely provides that the court may order stricken from a pleading matter having any one of the several faults I have mentioned.

I. In considering the source from which the new rules emanated there is no occasion to go into legislation further than to determine whether by it Congress vested the judicial branch of the government with appropriate power. So also there is no need to go into the equity rules as they formerly existed, save that as precedents they were useful to, and in some measure assisted or guided, the framers of those civil rules.

The contention of the defendants, who made the motion, involves a single inquiry. This is whether any paragraph of the complaint violates or goes outside of rule 12(f).

The complaint contains 20 paragraphs. Annexed thereto are copies of two written agreements. One is Exhibit I which was made September 22, 1944. The other is Exhibit II which was made February 19, 1945. Another was signed in March, 1943, but no copy is annexed to the complaint, and there are sub-exhibits attached to Exhibits I and II.

The notice of motion seeks elimination from the complaint of paragraphs 10 to 19 in their entireties, as well as of parts of paragraph 20. I shall first treat paragraphs 10 to 19 as raising a single question. Then I shall discuss paragraph 20 separately. For convenience, in identifying the paragraphs the numbers the paragraphs bear will be employed.

II. The essence of the paragraphs assailed is substantially as follows:

10. The plaintiff brought an action against the defendants in this court in September, 1942. In it, as he asserts, he sought to recover damages he had suffered by reason of a conspiracy, inaugurated by the defendants in 1934, to injure him as a priest and bishop of the Eastern Orthodox Church.

11. In the action, among other things, the plaintiff claimed the defendants committed acts, identified below by seven small letters, in substance as follows:

a. In violation of church usage, without knowledge or notice, and without hearing or trial, an alleged excommunication of the plaintiff was requested and allegedly procured in February, 1934, by the Patriarch of Constantinople.

b. Knowing that the excommunication was null and void, from 1934 to the commencement of the litigation, communications were circulated among the public to the effect that the plaintiff was a mere layman and that all sacraments performed by him or by the priests ordained by him were void.

c. Various newspapers were induced to refuse notices or advertisements as to religious activities of the plaintiff or of communities affiliated with him or priests ordained by him.

d. Priests the plaintiff had ordained were induced to renounce their ordinations by him and to become affiliated with the defendants.

e. Communities organized by him were induced to leave his jurisdiction and to affiliate themselves with the defendants.

f. An effort was made to prevent a bishop of the Orthodox Church from officiating with the plaintiff in religious sacraments under threat of severing relations between the Church of Constantinople and the Russian Church.

g. Like acts were committed which were designed to prevent the plaintiff

from exercising his calling as a priest and bishop of the Eastern Orthodox Church.

12. In March, 1943, the parties agreed to settle the action begun in 1942, and a condition precedent thereto was that the defendants procure execution by the Patriarch of Constantinople and deliver to the plaintiff a certain document annexed to the agreement and cause it to be published in certain newspapers. In substance, the document revoked the alleged excommunication and removed any cloud which might have been created by the defendants from plaintiff's status as a bishop of the Eastern Orthodox Church.

13. The defendants failed to procure the document arranged for. The action was tried and a disagreement resulted in February, 1944.

14. On September 22, 1944, the parties executed another agreement looking to the settlement of the action (copy of which was annexed as Exhibit I). It was a condition precedent thereto that the defendants procure execution of a document by the Patriarch of Constantinople similar to that specified in the prior agreement of March, 1943, deliver it to the plaintiff and publish it in designated newspapers.

15. Thereafter the defendants claimed they were unable to procure execution by the Patriarch of Constantinople of Exhibit A attached to Exhibit I. The plaintiff insisted on defendants procuring Exhibit A and its delivery to the plaintiff. Steps were taken to bring on the second trial and the case was set for February 9, 1945.

16. On the last named date the plaintiff was ready to proceed and there were sundry negotiations for an adjustment. The defendant Spyrou asked for a private conference with the plaintiff and, speaking for both defendants, acknowledged to the plaintiff that the plaintiff had suffered great injury at the hands of the defendants since 1934, expressed a desire to make reparation and settle the litigation and made other proposals. The defendants also stated they were unable to procure execution by the Patriarch of Constantinople of Exhibit A or Exhibit B attached to Exhibit I and urged the plaintiff to waive them. The efforts at compromise (of which there has been only a partial recital of details) continued in various forms for some time, but were abortive.

17. and 18. Differences arose with respect to numerous matters it is useless now to go into. Neither the March, 1943, nor the September, 1944 (Exhibit I) nor the February, 1945 (Exhibit II) agreement was fully consummated.

19. Relying on the promises, representations and assurances of the defendants, the plaintiff accepted the modifications proposed by the defendants, executed Exhibit II and performed the terms and conditions thereof on his part to be performed.

20. The defendants have breached the aforesaid agreements in particulars specified of which, according to the plaintiff, three are designated in sub-divisions as (c), (d) and (e).

III. The story of the conduct of the parties, although not full, has been sufficiently told by the plaintiff for present purposes. The allegations of paragraphs 10 to 20 are so intertwined and so tied together in the agreements referred to in those paragraphs, however, that of necessity, so long as they are part of the complaint, they must be read together. In consequence, it seems to me it would be a waste to treat each paragraph as standing apart. Moreover, in order to ascertain whether the exhibits or the allegations are, in whole or in part, subject to be stricken out because of their admixture, I think we must deal with them as a single problem.

IV. Four qualities of "matter" are stated in subdivision (f) of rule 12. One of these is "scandalous"; but, as I see it, obviously this may be ignored. If so, then there would remain three qualities which govern in determining what is or what is not admissible. These qualities are "redundant", "immaterial" and "impertinent". If a pleading embrace matter which possesses any one of the last mentioned three qualities, thereby it is rendered subject to be stricken out. Moreover, it will not be essential always to specify which of those qualities or whether all apply.

It follows that each paragraph must be tested by examination which will disclose whether it has one of the qualities pre-

scribed by the rule. In order to make the examination, the meaning of the adjectives involved must be ascertained by resort to court decisions. The adjectives will be taken up in turn.

There are two sets of court decisions which are pertinent. One favors striking out sundry paragraphs or portions of them. The other looks in the opposite direction. In consequence, I shall summarize the conflicting groups of rulings and then consider the weight of each on what, if any, shall be admitted and what, if any, shall be excluded. The first group will be marked X and the second group will be marked Y.

X. (1) Redundant. Since the Federal Rules of Civil Procedure came into existence, when interpreting the first ground in Schenley Distillers Corporation v. Renken, D.C.,E.D.S.C., 34 F.Supp. 678, 684, the court has referred with approval to what Simkins had written about old equity rule 21. On this topic the statement was as follows (left column second full paragraph, page 684):

"Matter may be considered redundant if it is verbose, repetitious, superflous, or foreign to the issue."

In Watts Electric & Manufacturing Co. v. United-Carr F. Corp., D.C.,D. Mass., 27 F.Supp. 277, 278, the following was stated. "The Federal Rules of Civil Procedure * * * provide that each averment of a pleading shall be simple, concise and direct, and that the court may, upon motion, order any redundant, immaterial, impertinent or scandalous matter stricken from any pleading. See Rules 8(e) and 12(f). It seems to me that the paragraphs of the complaint and the exhibits which the defendant moves to strike are redundant. * * * The defendant's motion to strike these portions of the complaint is granted."

X. (2) Immaterial. In Schenley Distillers Corporation v. Renken, D.C.,E.D.S.C., 34 F.Supp. 678, 684, when speaking of the meaning of immaterial, Simkins said: "Matter is immaterial if it is non-essential, without weight, inconsequential, or collateral, and not determinative."

He also said (right column last paragraph, page 684): " * * * the second defense of the reply to the counterclaim in this action is legally insufficient, irrelevant and immaterial to the issues in controversy, and does not and cannot constitute a defense to the cause of action or claim stated in the counterclaim."

In Kraft v. R. H. Macy & Co., Inc., D.C. S.D.N.Y., 3 F.R.D. 54, where a settlement offer was made, the comment of the court (right column second paragraph) was this: " * * * he [the seller] refused to accept because his damages were greatly in excess of that amount [what was offered], are in substance allegations of an offer of settlement and rejection which is not material or relevant to the issues presented by the complaint. An offer of settlement is not admissible in evidence."

In support of the Kraft case, the New York Court of Appeals relied on Tennant v. Dudley, 144 N.Y. 504, 39 N.E. 644, where several statements were made. Among them was this (144 N.Y. p. 507, 39 N.E. 645): "The rule is well settled that no advantage can be taken of offers made by way of compromise; that a party may, with impunity, attempt to buy his peace."

So in Hardin v. Interstate Motor Freight System, D.C.,S.D.N.Y., 26 F.Supp. 97, the inclusion of surplus allegations was disapproved. There it was said: "As they [counsel] state, the New Rules and this form [Form 9] indicate that a mere general charge of negligence is sufficient, without specification. For this reason, based on their own contention, if form 9 is to be followed, the allegations contained in the third paragraph of the petition have now no place therein."

Again, in Alden-Rochelle v. American Soc. of C., A. & Publishers, D.C., S.D.N.Y. 3 F.R.D. 157, an action was brought to restrain the defendants from continuing certain illegal practices. Under rule 12(f) the defendants sought an order striking from the complaint reference to those alleged violations, one embraced in a consent decree and the other in a judgment. The motion prevailed and it was held (page 158 left column, first long paragraph; page 159 left column, first and second paragraphs) as follows:

"Defendants motion to strike from the complaint all reference to a consent decree in an action by the United States against

the defendants for alleged violation of the anti-trust laws, and to the judgment in a criminal action against the defendants obtained on a plea of nolo contendere is granted. * * *. The references to the consent decree and the plea of nolo contendere are unnecesary. Defendants may be prejudiced by their inclusion in the complaint. Plaintiffs insist that they are simply included for the purpose of showing the history and activity of the defendant [defendants]. If they are competent for this purpose, they need not be pleaded. It is not necessary to plead all evidentiary matters. If the trial court considers these matters proper proof upon the trial, he may admit them even though not pleaded. * * *

"The motion to strike all references to the consent decree and to the judgment entered on a plea of nolo contendere is granted with leave to amend."

Furthermore, in Best Foods v. General Mills, D.C.,D. Del., 3 F.R.D. 459, 460, 461, the court wrote as follows: "The first group of defenses must be stricken under Rule 12 (f), Federal Rules of Civil Procedure, on the ground that they are not germane to the subject matter of this suit. * * * This rule has been interpreted in such a way that any pleading not germane to the issues should be stricken on motion by the adverse party. * * * It is clear that these particular defenses are not germane to the issues before the court."

Finally, in principle the same controlling practice has been reaffirmed. The holding in International Tag & Salesbook Co. v. American Salesbook Co., Inc., D.C., S.D.N.Y., 6 F.R.D. 45, 48, covers the matter. There two claims were made by the plaintiff. Upon one he asked damages. With respect to the other it was alleged that he suffered by fraudulent treatment at the hands of the defendants.

The court took the position that inconsistency prevented a recovery. As to that it was said: "I think it is important on motions of this kind to consider the fact that the plaintiff will seek an examination of the defendants before trial, as plaintiff is doing now. Upon such an examination under the Rules, it would be entitled to take depositions upon matters relevant to the issues. It might be contended that relevant subjects are those found in the allegations of the complaint. It seems to me proper, therefore, that where there are obviously allegations which come within the condemnation of Rule 12(f) they should be stricken."

I think Parks-Cramer Co. v. Mathews Cotton Mills, D.C.,W.D.S.C., 36 F.Supp. 236, is in harmony with the last case cited. This impresses me as manifest. I rest my view on reading the first and second paragraphs of the right column, page 237, and the second and third complete paragraphs of the left column, page 238.

X. (3) Impertinent. In Schenley Distillers Corporation v. Renken, D.C.,E.D.S.C., 34 F.Supp. 678, 684, Simkins is quoted as having said: "Matter is impertinent if it is irrelevant and does not pertain to the controversy or proceeding before the court."

Professor Moore is quoted as having made this comment: "To determine whether matter is impertinent one must first determine the scope of the issues in controversy, *and then under 12(f) determine whether the matter injected in the pleadings is relevant or material thereto.* (Italics added). The Supreme Court has defined 'impertinent' as 'all matter not material to the suit.' Harrison v. Perea, 168 U.S. 311, 18 S.Ct. 129, 132, 42 L.Ed. 478 * * *."

So in Parks-Cramer Co. v. Mathews Cotton Mills, supra, the court spoke as follows (pages 237, 238 of 36 F.Supp.): "Upon the filing of this answer, the plaintiff filed a motion under Rule 12(f) * * * to strike the allegations in the answer in reference to fraudulent inducement of the contracts, upon the ground that said allegations were immaterial and impertinent to any existing claim of the defendant, in view of the fact that the defendant had not rescinded the contracts, but was in fact seeking to recover damages for their breach. * * * A case is presented where the defendant under the facts alledged has only one cause of action. * * * Consequently, the second cause of action should be stricken from the answer, * * *."

Professor Moore also has been frequently

quoted on the meaning of impertinence. In Best Foods v. General Mills, supra, pages 460, 461 of 3 F.R.D., the statement attributed to him is precisely in point. In his book on Federal Practice, he said (p. 658): "Impertinence consists of any allegation not responsive nor relevant to the issues involved in the action which could not be put in issue or be given in evidence between the parties."

Y. (1) Redundant. In the extract from Professor Moore below and in Westmoreland Asbestos Co. v. Johns Manville Corp., D.C.S.D.N.Y., 30 F.Supp. 389, 392, below, the quality of redundant will be coupled with qualities of impertinent and immaterial, so there is no occasion for including here what will be said there.

Y. (2) Immaterial. In Kraus v. General Motors Corporation, D.C.S.D.N.Y., 27 F.Supp. 537, 541 left column next to last paragraph, the court said: "Where no harm can come to the defendant, ordinarily the Court is very cautious about disturbing the pleading, unless the Court can clearly see that the allegations have no possible bearing upon the subject matter of the litigation. So here, although learned counsel might differ as to the superfluity of the pleading, yet the Court is of the opinion that few will argue that it is insufficient."

So in Samuel Goldwyn v. United Artists Corporation, D.C.S.D.N.Y., 35 F.Supp. 633, 637, left column near the top, this Court spoke as follows: "A motion to strike should be granted only when the allegations have no possible relation to the controversy. When the court is in doubt whether under any contingency the matter may raise an issue, the motion should be denied."

Likewise, in Radtke Patents Corporation v. C. J. Tagliabue Mfg. Co., D.C.E.D.N.Y., 31 F.Supp. 226, 227, a motion to strike was denied. In regard to this the court said:

"Such a motion is not favored, and will be granted only when the allegations have no possible relation to the controversy. * * * This is true even though the matter is shown to be false by the moving affidavits, as the motion to strike should not be granted if the court is in any doubt that it cannot avail as a defense, or if under any contingency it may raise an issue. * * * I am not in any sense passing on the facts, but it seems to me that they do raise an issue and can be availed of as a defense. * * *

"The allegations of the several portions of the defendant's answer, which plaintiff seeks to strike, are not impertinent or scandalous, but are material to the several defenses alleged and must be considered by the court."

In another case, when the same judge was sitting, in Sano Petroleum Corporation v. Shell Oil Co., D.C.E.D.N.Y., 3 F.R.D. 181, 182, the court said this: "Motions to strike under Rule 12(f) * * * are not favored, and usually will be granted only when the allegations have no relation to the controversy, and a failure to strike will unduly prejudice the adverse party."

Again, in Westmoreland Asbestos Co. v. Johns-Manville Corp., D.C.S.D.N.Y., 30 F.Supp. 389, 392, there was a statement as follows: "The defendants move for an order, pursuant to Rule 12(f) of the Rules of Civil Procedure to strike certain specified matter from the complaint on the ground that it is redundant, immaterial, impertinent and scandalous.

"In Securities and Exchange Commission v. Time-trust, Incorporated et al., D.C., 28 F.Supp. 34, * * * it was held that the mere presence of redundant and immaterial matter, not affecting the substance, is not in itself sufficient ground for granting a motion to strike such matter from the complaint. Further, that where no harm will result from immaterial matter not affecting the substance, the court should hesitate to disturb a pleading.

"The motion to strike certain specified matter from the complaint should be denied with two exceptions."

Y. (3) Impertinent. In 1 Moore, Federal Practice, page 660, the learned author made this statement: "It should be noted that under sub-division (f) [of Rule 12] a court should hesitate to strike matter unless it clearly appears to be 'redundant, immaterial, impertinent and scandalous'. Thus, where certain evidential facts, when read with the bill as a whole, give a fuller understanding thereof, they should not be struck.

In suits involving multiple and complex issues greater latitude in pleading may be allowed since the impertinence may not be so clear." The holding in Radtke Patents Corporation v. C. J. Tagliabue Mfg. Co., Inc., supra, is to the same effect.

Apart from the comments included above in regard to the qualities of matter which are referred to in rule 12(f), there is additional discussion of points of a general nature which bear directly on the problem of determining what conclusions should be reached. Three of these are as follows:

■ (1) In Sinaiko Bros, Coal & Oil Co. v. Ethyl Gasoline Corp., D.C., S.D.N.Y., 2 F.R.D. 305, 306, the court issued a warning with respect to the attitude which should be adopted by a judge in a case such as that now presented. This warning (left column third full paragraph) was that it "is quite well settled, particularly in this district, that motions to strike are not favored, and usually will be granted only when the allegations have no relation to the controversy, and a failure to strike will unduly prejudice the adverse party." In support of that proposition numerous cases have been cited.

■ (2) In Groves v. Paden City Glass Mfg. Co., D.C., N.D.W.Va., 2 F.R.D. 300, the action was for recovery of overtime compensation under the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq. There was a motion "to strike certain allegations from the complaint as redundant, immaterial and impertinent." These allegations were designed to furnish information about the employees. Among other things the court made this statement (left column second paragraph, page 301): "It is said ·that pleading such matter ?mounts to pleading evidence and should, therefore, be stricken. It is true that such allegations plead evidential facts, but such pleadings should not always be stricken. Where evidential facts, when read with the bill as a whole, give a better understanding thereof, they should not be stricken. * * * Allegations of evidential facts in such cases, although unnecessary under the rule of brevity, are not stricken out if not prejudicial. * * * Where no harm can come to the defendant, ordinarily the court is very cautious about disturbing the pleading unless the court can clearly see that the allegations have no possible bearing upon the subject matter of the litigation."

(3) In Minneapolis Gasoline & F. Co. v. Ethyl Gasoline ·Corp., D.C.S.D.N.Y., 2 F.R.D. 307 (right column second paragraph), where defendants expressed fear of being prejudiced by the plaintiff reading objectionable matter to the jury, the court (writing the opinion) said that, by application to the trial judge, such procedure could be avoided. If that view were correct and timely applied there would be no ground for complaint; but it does not seem to me that any one can be sure of it happening.

However, because of doubt arising from the incidental perplexity, and the imperative character of the applicable rule, I think fairness cannot be surely accomplished unless there be compliance with controlling directions on the subject in rule 8.

V. What I have set out above impresses me as sufficient to furnish definitions of the three qualities belonging to matters consideration of which would lead to conclusions as to whether any part of the complaint should be stricken out. Our task is to examine the facts. Two summaries of the allegations have been gathered. One has already been set out. I now turn to the other.

■ VI. Near the beginning of my discussion I gave the substance of paragraphs 10 to 19 of the complaint. In his first brief counsel for the plaintiff submitted his interpretation of paragraphs 10 to 19. I shall, therefore, now recite what, as I understand, he deems to be the essence of those paragraphs. In his own words this is as follows (brief, pp. 3, 4): "The allegations sought to be stricken bear directly on the making of the oral agreement and the facts and circumstances out of which that agreement arose. The allegations sought to be stricken set forth the nature of the action and the relief sought (Pars. 10-11), the first agreement of settlement of March, 1943 (Pa. 12), defendants' failure to comply therewith (Par, 13), the second agreement of settlement of

230

September 22, 1944 (Par. 14), defendants' failure to comply therewith and the imminence of the second trial (Par. 15), the oral agreement made by defendants (Par. 16), the acceptance thereof by plaintiff (Par. 17), the intent of the parties not to embody the oral agreement in the last written agreement (Par. 18) and the compliance by plaintiff with the terms of said oral agreement (Par. 19)."

In addition, paragraph 20 states particulars in which the plaintiff claims the principal written agreements were breached. We, therefore, have for consideration the entire complaint except the annexed exhibits. By the notice of motion the exhibits have been excluded from being passed on.

It has been necessary carefully to examine each paragraph of the complaint. I think study of it has been adequate. I think that every paragraph, as it stands, has been sufficiently scrutinized to enable a reader to construe its provisions.

VII. I have not ruled on the question of res adjudicata or on the effect of the order made by Judge Conger. If I should take up a request to deal with either, I should regard action by me now as premature.

I have been somewhat perplexed with respect to some of the paragraphs and have gathered numerous court opinions on the points involved; but, in view of the authorities cited, I have concluded that, at the present stage, I am not warranted in granting the motion to strike out any paragraph.

VIII. Motion to strike out parts of complaint denied. Settle order on two days' notice.